**Eula Jordan PRIVETTE, Plaintiff,**

**v.**

**UNION CARBIDE CORPORATION, CONSUMER PRODUCTS DIVISION, a corporation, Defendant.**

**Civ. A. No. C-C-72-203.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

April 28, 1975.

Robert Belton and Jonathan P. Wallas, Chambers, Stein & Ferguson, Charlotte, N. C., for plaintiff.

J. Frank Ogletree, Jr., H. Lane Dennard, Jr., and Guy F. Driver, Jr., Thompson, Ogletree & Deakins, Greenville, S. C., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT OF DISMISSAL

McMILLAN, District Judge.

### I.
### FINDINGS OF FACT
### GENERAL

1. This suit was instituted by Plaintiff Eula Jordan Privette, seeking relief for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This suit, an individual action and not a class action, alleges that the Plaintiff was discriminated against on the basis of her female sex.

2. The Defendant Union Carbide Corporation, Consumer Products Division, Charlotte, North Carolina plant, is a corporation organized under the laws of the State of New York and is engaged in the business of manufacturing dry cell batteries for the United States Government as well as private industry.

3. Defendant Union Carbide Corporation's Charlotte plant (hereinafter referred to as "the Company"), is an employer engaged in an industry affecting commerce within the meaning of § 701

(b) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

4. The Plaintiff filed a charge with the Equal Employment Opportunity Commission on February 12, 1971, alleging that she was forced to quit her job "because of harassment due to illness" on January 13, 1971, and further alleging that the Company had refused to rehire her on February 1, 1971, because of her sex. This Plaintiff made no additional claims of discrimination in her charge and this was the scope of the charge that was in fact investigated by the Equal Employment Opportunity Commission. The right to sue letter was issued on June 8, 1972 (Pl.Exh. 1; Exh. "A" of Complaint).

5. On September 6, 1972, the Plaintiff filed her suit in this Court setting out in Paragraph IV of the Complaint the alleged violation of Title VII. The Defendant filed Answers denying the allegations.

6. The Defendant contended that this Notice of Right to Sue was issued by the Regional Office under a delegation of authority from the Equal Employment Opportunity Commission which violates the requirements of the Freedom of Information Act, 5 U.S.C. § 552. Defendant moved to dismiss the Complaint for lack of jurisdiction of this Court over the subject matter in accordance with F.R.Civ.P. 12(b)(1) because, while the Equal Employment Opportunity Commission is given specific authority to issue, amend or rescind suitable procedural regulations in conformity with the standards and limitations of the Administrative Procedure Act, the Freedom of Information Act requires public disclosure of such agency information. The EEOC directive which delegates the power to issue notices of right to sue to the Field Offices of the EEOC was not made available to Defendant as required by the Freedom of Information Act. The Defendant, citing McDonald v. General Mills, Inc., 387 F.Supp. 24 (E.D.Cal.1974), attempted to obtain a copy of the EEOC document

in which the EEOC delegated authority to the Field Offices by serving upon the local Regional Office of the EEOC a subpoena *duces tecum* requiring the Commission to produce "a true and complete copy of each and every edition and revision of the Equal Employment Opportunity Commission Manual from July 1, 1965, to date, including the interpretive, procedural and conciliation division of said Manual and revisions". These manuals contain the delegation of authority to regional directors to issue right to sue notices and are marked "ADMINISTRATIVELY RESTRICTED". Michael H. McGee, the District Counsel of the EEOC, Charlotte, North Carolina office appeared in Court stating that the EEOC could not locate the subpoenaed documents but even if the EEOC could locate them they would be marked "ADMINISTRATIVELY RESTRICTED". The Court directed District Counsel McGee to comply with the subpoena, and, on May 7, 1974, this subpoena was complied with and this manual was filed with the Court. The Regional Director also filed with the Court two pages copied from Volume 39, No. 53, of the Federal Register, March 18, 1974, and stated by affidavit that page 10178 of this document contains a formal ratification of all Notices of Right to Sue issued by District Directors after October 15, 1969, and that page 10123 contains a formal delegation of authority to District Directors to issue Notices of Right to Sue after the date of publication of the Notice. The Court finds this Notice of Right to Sue was properly issued.

7. During the trial, the Plaintiff alleged that she had been mistreated in violation of law because of her sex with respect to testing and supervisory promotional practices of the Company. In addition, the Plaintiff has relied upon evidence presented in Nance v. Union Carbide Corporation, a suit consolidated with the present case for trial, to provide a factual background for allegations regarding job classifications, layoffs, posting job vacancies and present effects of past discrimination. The Defendant objected to the introduction of evidence on these issues in this case claiming that evidence should not be heard because these issues were beyond the scope of the charge filed with the EEOC and were not in fact investigated by the EEOC. The Defendant contended that these specific charges should have been the subject matter of a charge and processed through the requirements of the Equal Employment Opportunity Commission and Title VII. That evidence has been considered by the Court.

8. The Defendant also served upon the Equal Employment Opportunity Commission a subpoena *duces tecum* requiring the EEOC to produce all writings, interoffice communications, charges, evidence of service, documents, memoranda, findings of fact, decisions, conclusions, investigation files, and all other written or published materials and matters relating to the following charges:

(a) Eula Rae Jordan (Privette) v. Union Carbide Corporation— Charge Number TATI–2374; Case Number YATI–536;

(b) Winifred S. Nance v. Union Carbide Corporation—Charge Number TATO 1644, TATO 1–2374, TATI–2569; Case Number YATI–388;

(c) Arrie M. Suggs v. Union Carbide Corporation—Charge Number TATI–1257; Case Number YATI–388; and

(d) Any other charges filed with the Equal Employment Opportunity Commission by any one of the persons listed in Paragraphs a, b, or c above which name Union Carbide Corporation.

The EEOC through its local District Counsel, Michael H. McGee, submitted to the Court EEOC files involving the Plaintiff Privette, Winifred S. Nance and Arrie M. Suggs. The Defendant complained that the submitted files were not the complete files but were "skeleton files" which had been "censored"

by the EEOC. The District Counsel of the EEOC called the process of withholding the full contents of these files "sanitizing the files", and the Defendant objected to this procedure. The objection was overruled.

9. The Plaintiff in the *Nance* case offered into evidence the deposition of William Moffitt, Plant Manager of the Defendant [Pl.Exh. 10 (72–185)], Florence Laslie, a female and Director of Employee Relations for the Defendant [Pl.Exh. 9A, 9B (72–185)], Paul Humphreys, General Foreman of Production for the Defendant [Pl.Exh. 11 (72–185)], and Clyde Williams, one of the line foremen for the Defendant [Pl. Exh. 12 (72–185)]. The Defendant objected to this procedure stating that testimony should be heard in open Court where there was no showing of unavailability of the witnesses. In addition, the Defendant objected to the admission of all of these depositions, with the exception of Mr. Moffitt's, on the further ground that the individuals were not "Managing Agents" of the Defendant within the meaning of F.R.Civ.P. 32(a) (2). Florence Laslie had responsibility for hiring new employees, administering the benefit plans and safety programs of the Company and overseeing the operation of the Plant Dispensary, Cafeteria and Canteen (Pl.Exh. 9A, p. 6 (72–185)]. Paul Humphreys had responsibility for the day-to-day production operations of the plant and seeing that production schedules were met. Ten supervisors reported to him and he reported to the Assistant Plant Manager for Production [Pl.Exh. 11, p. 17 (72–185)]. Clyde Williams is responsible for the 25 employees who worked on line number 3 in Department 225 (Finishing) [Pl.Exh. 12, p. 13 (72–185)]. All these objections were overruled.

## PLAINTIFF'S VOLUNTARY TERMINATION OF EMPLOYMENT

10. The Plaintiff voluntarily quit her employment with the Company on January 13, 1971, because of personal problems at home (Def.Exh. 1; Tr. 422–423, Tr. 732–33, Tr. 780). She was advised by Miss Florence Laslie, Director of Employee Relations, that she would probably not be rehired by the Company because of her poor attendance record (Tr. 781). Plaintiff's employment records indicate that she was absent from work a total of twenty-five (25) days during the period from January to September, 1970. On September 25, 1970, the Plaintiff was given a written warning for excessive absences (Def.Exh. 3D). On November 4, 1970, the Plaintiff requested and was granted a one month leave of absence (Def.Exh. 1). She later requested an extension of this leave of absence until January 4, 1971, which was granted (Def.Exh. 1). The Plaintiff did not return to work on January 4, 1971, but was absent until January 8, 1971 (Def.Exh. 1). On January 11, 1971, the Plaintiff was again given a written warning concerning her excessive absences and advised that disciplinary action would be taken if her attendance did not improve (Def.Exh. 3B).

11. After the Plaintiff quit her job on January 13, 1971, she phoned Miss Laslie as well as George Joseph, the Employee Relations Assistant, and requested to be rehired by the Company. She was advised by both of these individuals that the Company presently had employees on layoff status and that there was no work available. She was also reminded by Miss Laslie of their previous conversation in which she had been advised that she probably would not be rehired because of her poor attendance record (Def.Exh. 1; Tr. 734, Tr. 782, Tr. 405–406, Tr. 427–462).

12. In view of the Plaintiff's testimony and the evidence presented by the Company, the Court declines to find that Plaintiff was harassed into quitting her job or that she was not rehired because of her sex.

## SELECTION OF SUPERVISORS

13. The Plaintiff Privette contends that the Company discriminated against

her because of her sex by not considering her for promotion to supervisory status. However, the Plaintiff presented no evidence concerning her qualifications for a supervisory position (Tr. 411).

14. The Company admits that the Plaintiff was not considered for promotion to supervisor. It presented evidence that she was not qualified for the position. Prior to quitting her job with the Company, the Plaintiff had several warnings concerning her high rate of absenteeism. She was advised before quitting that her absentee record was so poor that she probably would not be considered for rehire (Def.Exh. 1, 5; Tr. 781).

15. Because of her absentee record and poor health record, the Plaintiff was not considered for promotion to supervisor, nor would a male with similar records have been so considered (Def.Exh. 1, 5).

## TESTING

16. Prior to December of 1970, Union Carbide at its Charlotte facility utilized the Mechanical Comprehension Test (Bennett) and Modified Alpha Examination (Alpha) to select employees for entry into the Maintenance Department (Department 327), Process Inspection Department (Department 355), and the Machine Operator Adjuster Classification (Department 440). Different cutoff scores were established for these departments and, to qualify for a given department, employees were required to pass both tests. These tests were not utilized as prerequisites to initial hire at the Charlotte facility (Tr. 791–796).

17. Between July of 1965 and December of 1970, approximately 141 males and 18 females took these examinations.

18. The Plaintiff Privette took the Bennett and Alpha examinations prior to their discontinuance in an attempt to qualify for the Process Inspection Department. The Plaintiff failed to obtain satisfactory scores and therefore failed to qualify for this department.

19. Both the Bennett and the Alpha examinations were last given by the Charlotte facility in December of 1970.

20. Since the time that Plaintiff Privette took these tests in August, 1970, six females and two males have entered the Process Inspection Department and there are presently nine males and nine females within this department (Def. Exh. 16B, Tr. 796).

21. The Charlotte facility of Union Carbide presently utilizes three separate instruction/testing programs to help select employees for entry into the same departments for which the Bennett and Alpha were previously utilized (Maintenance, Process Inspection and Machine Operator Adjuster). (Tr. 685–686). The Plaintiff Privette voluntarily terminated her employment with the Company before these programs were instituted and has not been affected by this utilization [Def.Exh. 1; Pl. Exh. 24(A) (72–185)].

## SUMMARY

22. The Plaintiff voluntarily quit her employment with the Company on January 13, 1971. She was not rehired because there was no work available and because of her previous unsatisfactory record, of which she had been warned. The Plaintiff was not forced into quitting her job nor denied re-employment because of her sex.

23. The Company did not discriminate against the Plaintiff because of her sex in failing to consider her for promotion to a supervisor. Plaintiff has failed to prove that she was qualified for such a position. Plaintiff was not qualified for a supervisory position.

24. The Plaintiff has not shown that she was discriminated against because of the tests the Company administered as a condition to entering certain departments. The Plaintiff voluntarily quit her job with the Company prior to the institution of the present testing/instructional programs.

## II.

### CONCLUSIONS OF LAW
### GENERAL

1. This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The Court has jurisdiction over the parties pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e–5(f)(3).

2. The Defendant, Union Carbide Corp., Consumer Products Division, is engaged in an industry affecting commerce within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b) and has employed, at all times material hereto, fifteen or more employees.

3. The Plaintiff alleges that the Defendant has discriminated against her on account of her sex in violation of Sections 703 and 704 of Title VII, 42 U.S.C. §§ 2000e–2, 2000e–3. The Plaintiff seeks to enjoin the alleged discriminatory employment practices and also seeks monetary relief in the form of back pay.

■ 4. In cases arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Plaintiff bears the burden of proving a prima facie case of discrimination on account of sex. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

5. This case was consolidated for trial with the case of Nance v. Union Carbide Corp., Civil Action No. 72–185. The evidence taken in the *Nance* case is relevant to this case insofar as it provides a background for the Plaintiff's individual claims.

6. This action is an individual action. It is not a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Plaintiff does not purport to represent a class of similarly situated females and seeks monetary relief in the form of back pay only for herself (Tr. 19). Since no injunctive relief is being ordered for Plaintiff, it is not necessary to consider the possible impact of such relief on other employees similarly situated.

### PLAINTIFF'S VOLUNTARY TERMINATION OF EMPLOYMENT

7. The Plaintiff's basic claim is that she was harassed into quitting her job with the Defendant because of her sex. She also claims that the Defendant refused to rehire her because of her sex. The Defendant contends that the Plaintiff voluntarily quit her job for personal reasons and that she was not rehired because of her poor attendance record.

■ 8. The Plaintiff has the burden of proving that she was harassed into quitting her job because of her sex. McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff was not forced to quit her job with the Defendant. In fact, the Plaintiff admitted on the record that she quit her job for personal reasons (Tr. 421–425).

9. The only evidence presented to the Court in support of the Plaintiff's claim that she was not rehired because of her sex was the service record of one male employee who was rehired after having been terminated because of poor work performance (Tr. 441). The Defendant, however, has shown that the Plaintiff was not rehired because of her poor attendance record and because there were no job openings at the time the Plaintiff requested reemployment (Tr. 423–427; *See* Findings of Fact No. 10–12).

■ 10. Plaintiff was not harassed into quitting her job because she is a female. McDonnell Douglas v. Green, *supra;* Barnett v. W. T. Grant Co., 396 F.Supp. 327, 7 FEP Cases 434 (W.D. N.C.1974). Pruitt v. Commercial Carriers, Inc., 395 F.Supp. 1040, 7 FEP Cases 502 (N.D.Ala.1974).

■ 11. Plaintiff has failed to show that she was not reemployed by the Defendant because of her sex. McDonnell Douglas v. Green, *supra;* Bar-

nett v. W. T. Grant Co., 396 F.Supp. 327, 7 FEP Cases 434 (W.D.N.C.1974). Pruitt v. Commercial Carriers, Inc., 395 F.Supp. 1040, 7 FEP Cases 502 (N.D. Ala.1974). Defendant was justified in refusing to rehire the Plaintiff because of her poor attendance record.

## SELECTION OF SUPERVISORS

■ 12. The Plaintiff has introduced statistical evidence which shows that male supervisors outnumber female supervisors at Defendant's Charlotte facility. The Plaintiff contends that this statistical imbalance is caused by the Defendant's alleged use of subjective criteria in the selection of supervisory personnel (Tr. 382–84). The Court finds that Plaintiff's failure to attain promotion to supervisor is the result of her own lack of qualification for that job rather than the result of sex discrimination.

## TESTING

13. Title VII of the Civil Rights Act of 1964 specifically authorizes employers to use professionally developed ability tests to determine qualifications for employment or advancement provided their administration and the action taken on their results are not designed, intended or used to discriminate in employment because of race, color, religion, sex or national origin, 42 U.S.C. § 2000e–2(h). The EEOC has equated the job relatedness requirements of Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) with the validity of tests and has promulgated Guidelines on validation requirements. *See* Guidelines on Employer Selection Procedures, 29 C.F.R. § 1607 (1971).

14. Ms. Privette testified that she took the Modified Alpha and Mechanical Comprehension Tests in an attempt to qualify for the Process Inspection Department. She failed to qualify for entry into this Department. The evidence indicates that these tests were discontinued by the Company in December of 1970 after it was determined that the size of the sample available was too small for a validation study to be statistically significant. After the use of these tests was discontinued, the Plaintiff voluntarily terminated her employment with Union Carbide. Her problems are unrelated to the tests.

## ORDER

All claims for relief are denied. No costs are assessed. This the 27 day of April, 1975.