Barbara J. HENSON, Plaintiff-Appellant,

v.

CITY OF DUNDEE, Defendant-Appellee.

No. 80–5827.

United States Court of Appeals,
Eleventh Circuit.

Aug. 9, 1982.

Morris W. Milton, Williams & Milton Law Firm, St. Petersburg, Fla., for plaintiff-appellant.

Lynn H. Groseclose, Lakeland, Fla., for defendant-appellee.

Before VANCE, KRAVITCH and CLARK, Circuit Judges.

VANCE, Circuit Judge:

In deciding this appeal, we must determine the proper application of Title VII principles to claims of sexual harassment at the workplace. Appellant, Barbara Henson, filed a Title VII action against the City of Dundee, Florida alleging sexual harassment on her job with the police department. At the close of appellant's case, the district court entered judgment for the City of Dundee and this appeal followed.

Henson was hired as a dispatcher in the five-officer Dundee police department on January 14, 1975. Her position was funded by the federal government under the Comprehensive Employment Training Act (CETA). There were five other CETA employees who worked as dispatchers for the department, one female employee who generally worked with Henson during her shift, Carolyn Dicks, and four male employees.

Henson claims that during the two years she worked for the Dundee police department, she and her female coworker were subjected to sexual harassment by the chief of the Dundee police department, John Sellgren. She alleges that this harassment ultimately led her to resign under duress on January 28, 1977. In May 1977 Henson filed a complaint against the City of Dundee with the Equal Employment Opportunity Commission (E.E.O.C.) alleging sexual harassment. The E.E.O.C. issued a right to sue letter on January 31, 1978 and Henson filed this suit in the middle district of Florida in March.[1]

At trial, Henson attempted to prove three types of sexual harassment. First, she claimed that Sellgren created a hostile and offensive working environment for women in the police station. She and her former coworker, Dicks, testified that Sellgren subjected them to numerous harangues of demeaning sexual inquiries and vulgarities throughout the course of the two years during which Henson worked for the police department. Henson stated that in addition to these periodic harangues, Sellgren repeatedly requested that she have sexual relations with him. The district court, however, did not permit Henson's attorney to present evidence that Sellgren had also made sexual advances to Dicks. Henson testified further that she complained of Sellgren's conduct in 1976 to the city manager, Jane Eden, but that Eden took no action to restrain Sellgren.

Henson also claimed that her resignation on January 28, 1977 was tantamount to a constructive discharge based upon sex in violation of Title VII. Specifically, she testified that on January 18, 1977 Sellgren suspended her for two days on the pretext that she had violated an office policy by bringing food into the dispatch room. Ac-

---

1. The appellee has not contended that any complaint of Henson was the subject of an untimely charge with the E.E.O.C. Any objections to the timeliness of the charge are therefore waived. *See Zipes v. Trans World Airlines, Inc.,* —— U.S. ——, ——, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).

cording to Henson, this policy had not been previously enforced, and she regarded the suspension as a warning by Sellgren that she would be fired if she did not accede to his sexual requests. She therefore claimed that her resignation was involuntary.

Finally, Henson claimed that Sellgren prevented her from attending the local police academy because she refused to have sexual relations with him. She testified that Sellgren made it clear to her that if she agreed to have a relationship with him, he would help her gain the approval of the city manager to attend the academy. Both Henson and Dicks testified that during this period two of the male CETA dispatchers were sent to the police academy. This testimony was corroborated by other witnesses and by the employment records of the two male dispatchers. Additionally, the city manager testified that Henson was qualified to attend the police academy and that

she would have permitted Henson to attend if Sellgren had informed her of Henson's interest in the academy.

During opening arguments, the district judge intimated serious reservations about the viability of a Title VII claim involving sexual harassment of the types alleged by Henson.[2] At the close of Henson's case, the district court granted the city's motion to dismiss the action pursuant to rule 41(b) of the Federal Rules of Civil Procedure.[3] From the judge's comments on the bench and from his memorandum accompanying the dismissal order, we discern the following bases for dismissal:

(1) Henson's claim that she suffered under a hostile and demeaning work environment standing alone did not state a cognizable claim under Title VII. Although Henson's supervisor, Sellgren, subjected her and her female coworker to "crude and vulgar language, almost daily inquiring of

---

2. During opening argument, the district judge engaged the following exchange with Henson's attorney, Mr. Milton, and the attorney for the City of Dundee, Mr. Sprott:

> THE COURT: Aren't there decisions that say that when sexual advances are not discrimination under the statute? Aren't there decisions that go that way?
> MR. SPROTT: Your Honor, I haven't found a case on this question of sexual advances.
> THE COURT: It seems to me that one is one thing and one is another thing.
> MR. MILTON: No, sir, it is prohibited for them to be treated differently from men, and sexual harassment—
> THE COURT: That is not discrimination action.
> MR. MILTON: It would be based on sex.
> THE COURT: I don't know whether it is or not.
> MR. MILTON: It would be if he did not do it for men.
> THE COURT: Do you have evidence that he did it with the other woman or didn't do it with the other woman, made advances to her?
> MR. MILTON: There will be evidence presented that he did constantly make harassment toward both women.
> THE COURT: Do you understand the problem? There are cases—I don't know whether they are in the Circuit, but there are cases in the Federal court. In other words a discrimination case is one thing, do you understand? It is based on being a female and treated differently from the males. That is a clear proposition, no question about it, but when

you mix up the other with it then you are in an area that is uncertain. So, we will have to hear it, but the Court doesn't think too much of it. If she quit that job because of sexual harassment that is a State case. That is a State proposition. She can sue someone in the County of the State of Florida, but not in the Federal court. I think that is the law on that subject. We will hear your case, but that is what you are up against. Go ahead.

3. Rule 41(b) of the Federal Rules of Civil Procedure provides in pertinent part:

> Involuntary Dismissal: Effect Thereof. . . . . After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

these two women employees as to their sexual habits and proclivities," the trial judge concluded that there was no violation of Title VII unless Sellgren's conduct inflicted upon Henson some tangible job detriment.

(2) Henson's claim that she was compelled to resign because of an intolerable, sexually demeaning work environment stated a claim upon which relief could be granted for constructive discharge under Title VII. However, the district court did not credit Henson's testimony that she resigned from the Dundee police force because of an intolerable work environment. Specifically, the court found that Henson resigned because a Dundee police officer with whom she was having an affair, Robert Owens, had been forced to resign in January 1977.

(3) Henson's claim that she was prevented from attending the police academy because of her refusal to have sexual relations with Sellgren stated a claim under Title VII. At the same time, her testimony regarding Sellgren's demands for sex as a condition to attendance at the academy was "not believed by me, as the Trial Judge." The court specifically found, however, that none of the male CETA dispatchers had been sent to the academy. The court also found that Sellgren had never made any sexual advances to Henson's coworker, Carolyn Dicks.

On appeal, Henson argues that her work environment allegations stated a claim under Title VII for sexual harassment. She also argues that the district court erred in its holdings on her constructive discharge and police academy claims.

## I.

*Sexual harassment and work environment*

Henson contends that a plaintiff states a claim under Title VII by alleging that sexual harassment perpetrated or condoned by an employer has created a hostile or offensive work environment. She argues that

the trial court erred by holding that a Title VII plaintiff must allege in addition that she suffered some tangible job detriment as a result of working in such an environment. We agree that under certain circumstances the creation of an offensive or hostile work environment due to sexual harassment can violate Title VII irrespective of whether the complainant suffers tangible job detriment. We therefore reverse the district court's order as to this claim and remand for a new trial on Henson's work environment claim.

Title VII prohibits employment discrimination on the basis of gender, and seeks to remove arbitrary barriers to sexual equality at the workplace with respect to "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). The former fifth circuit has held that "terms, conditions, or privileges of employment" include the state of psychological well being at the workplace. In the area of race discrimination, Judge Goldberg stated:

> the phrase "terms, conditions, or privileges of employment" in [Title VII] is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination.

*Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). Therefore, courts have held that an employer violates Title VII simply by creating or condoning an environment at the workplace which significantly and adversely affects an employee because of his race or ethnicity, regardless of any other tangible job detriment to the protected employee. *See, e.g., Calcote v. Texas Educational Foundation, Inc.*, 458 F.Supp. 231, 237 (W.D.Tex.1976) (racial harassment of white employee created discriminatory working conditions), *aff'd*, 578 F.2d 95 (5th Cir. 1978).[4]

---

**4.** *Accord, Friend v. Leidinger*, 588 F.2d 61, 68–69 (4th Cir. 1978) (Butzner, J., concurring in part and dissenting in part) (numerous derogatory references to blacks by supervisors and coworkers created discriminatory working conditions); *Firefighters Inst. for Racial Equality v.*

Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets.[5] A pattern of sexual harassment inflicted upon an employee because of her sex is a pattern of behavior that inflicts disparate treatment upon a member of one sex with respect to terms, conditions, or privileges of employment. There is no requirement that an employee subjected to such disparate treatment prove in addition that she has suffered tangible job detriment.

We are bolstered in our conclusion that a hostile or offensive atmosphere created by sexual harassment can, standing alone, constitute a violation of Title VII by a recent decision of the United States Court of Appeals for the District of Columbia circuit. In *Bundy v. Jackson,* 641 F.2d 934, 943–46 (D.C.Cir.1981), the court found that the principle of law equating illegal sex discrimination with a hostile work environment caused by sexual harassment "follows ineluctably from numerous cases finding Title VII violations where an employer created or condoned a substantially [racially] discriminatory work environment, regardless of whether the complaining employees lost any tangible job benefits." *Id.* at 943–44 (citing *Rogers v. EEOC,* 454 F.2d at 238) (emphasis omitted). *See also Walter v. KFGO Radio,* 518 F.Supp. 1309, 1315–16 (D.N.D.1981); *Morgan v. Hertz Corp.,* 542 F.Supp. 123, 27 Fair Empl.Prac.Cas. (BNA) 990, 994 (W.D.Tenn.1981); *Brown v. City of Guthrie,* 22 Fair Empl.Prac.Cas. (BNA) 1627, 1631–33 (W.D.Okla.1980).[6]

*City of St. Louis,* 549 F.2d 506, 514–15 (8th Cir.), *cert. denied,* 434 U.S. 819, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977) (employee eating clubs segregated by race created discriminatory work environment for black employees); *Lucero v. Beth Israel Hosp. & Geriatric Center,* 479 F.Supp. 452, 454 (D.Colo.1979) (pattern of racial slurs created discriminatory working environment for black employees); *United States v. City of Buffalo,* 457 F.Supp. 612, 631–35 (W.D. N.Y.1978) (same conclusion), *modified in part,* 633 F.2d 643 (2d Cir. 1980). *Cf. Gray v. Greyhound Lines, East,* 545 F.2d 169, 176 (D.C.Cir. 1976) (employee has standing to challenge employer's hiring practices that create a discriminatory work environment).

5. The problem of sexual harassment in the workplace apparently is widespread. It was recently the focus of hearings before the Senate Committee on Labor and Human Resources. At those hearings, the acting chairman of the Equal Employment Opportunity Commission cited the rising number of charges filed with the agency that complained of sexual harassment. *See* Sex Discrimination in the Workplace, 1981, Hearings Before the Senate Comm. on Labor and Human Resources, 97th Cong., 1st Sess. 336, 342 (1981) (statement of J. Clay Smith, Jr., acting chairman of E.E.O.C.); 106 L.R.R. News & Background Inf. 333–35 (April 27, 1981). *See also* U.S. Merit Systems Protection Board, Sexual Harassment in the Federal Workplace: Is it a Problem? (1981); 45 Fed. Reg. 25,024 (April 11, 1980) (commentary accompanying E.E.O.C. interim guidelines on sexual harassment).

6. *Cf. Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp. 523, 28 Empl.Prac.Dec. (CCH) ¶ 32,553 at 24,470 73 (D.D.C.1982) (sexual harassment gives rise to common law tort claims for invasion of right to privacy, assault and battery, and intentional infliction of emotional distress); *Woerner v. Brzeczek,* 519 F.Supp. 517, 519 (N.D.Ill.1981) (cause of action for for offensive work environment caused by sexual harassment can be stated under 42 U.S.C. § 1983); *Guyette v. Stauffer Chem. Co.,* 518 F.Supp. 521, 525–26 (D.N.J. 1981) (non-supervisory employee could not be held individually liable for sexual harassment under Title VII); *Kyriazi v. Western Elec. Co.,* 461 F.Supp. 894, 950 (D.N.J.1978) (plaintiff prevailed on pendent New Jersey state claim of tortious interference with contract due to sexual harassment causing hostile work environment); *Smith v. Rust Eng'g Co.,* 18 Empl.Prac. Dec. (CCH) ¶ 8698, at 4784 (N.D.Ala.1978) (no cause of action for hostile work environment caused by sexual harassment committed by co-worker where there was no allegation that management knew of the harassment); *Caldwell v. Hodgeman,* 25 Fair Empl.Prac.Cas. (BNA) 1647, 1649–50 (D.Mass.1981) (offensive environment caused by sexual harassment resulted in constructive discharge entitling employee to unemployment benefits); *Continental Can Co. v. State,* 297 N.W.2d 241, 248–49 (Minn.1980) (cause of action for hostile work environment due to sexual harassment under Minn.Stat. 363.03(1)(2)(c) (1978)). *But see Hill v. BASF Wyandotte Corp.,* 27 Fair Empl.Prac. Cas. (BNA) 66, 71–72 (E.D.Mich.1981); *Neeley v. American Fidelity Assurance Co.,* 17 Empl.

Additionally, the E.E.O.C. has recently issued regulations that provide a useful and informative set of guidelines on sexual harassment.[7] In pertinent part the guidelines provide that "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a) (1981).

Of course, neither the courts nor the E.E.O.C. have suggested that every instance of sexual harassment gives rise to a Title VII claim against an employer for a hostile work environment. Rather, the plaintiff must allege and prove a number of elements in order to establish her claim. These elements include the following:

(1) *The employee belongs to a protected group.* As in other cases of sexual discrimination, this requires a simple stipulation that the employee is a man or a woman.

(2) *The employee was subject to unwelcome sexual harassment.* The E.E.O.C. regulations helpfully define the type of conduct that may constitute sexual harassment: "sexual advances, requests for sexual favors, and other verbal or physical con-

duct of a sexual nature ...." 29 C.F.R. § 1604.11(a) (1981). *See also* E.E.O.C. Dec. No. 81–18, 27 Fair Empl.Prac.Cas. (BNA) 1793, 1802–05 (April 3, 1981). In order to constitute harassment, this conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive. *Gan v. Kepro Circuit Systems, Inc.,* 27 Empl.Prac.Dec. (CCH) ¶ 32,379, at 23,648 (E.D.Mo.1982); *Vinson v. Taylor,* 23 Fair Empl.Prac.Cas. (BNA) 37, 42 (D.D.C.1980); 29 C.F.R. § 1604.11(a) (1981) (only unwelcome sexual advances generate Title VII liability); Development, *New EEOC Guidelines on Discrimination Because of Sex: Employer Liability for Sexual Harassment Under Title VII,* 61 B.U.L.Rev. 535, 561 (1981) ("[w]hether the advances are unwelcome ... becomes an evidentiary question well within the courts' ability to resolve").

(3) *The harassment complained of was based upon sex.* The essence of a disparate treatment claim under Title VII is that an employee or applicant is intentionally singled out for adverse treatment on the basis of a prohibited criterion. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *United States v. International Brotherhood of Teamsters,* 431 U.S. 324, 335 n.15, 97

---

Prac.Dec. (CCH) ¶ 8395, at 6009 (W.D.Okla. 1978).

**7.** In *General Elec. Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the Supreme Court suggested the degree to which courts should defer to the E.E.O.C.'s interpretation of Title VII:

"We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

*Id.* at 141–42, 97 S.Ct. at 410–11 (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). The E.E.O.C.

guidelines on sexual harassment are well founded in Title VII principles previously enunciated by the courts, *see Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972), and of the agency itself. A number of other courts have found the guidelines to be valuable. *See, e.g., Bundy v. Jackson,* 641 F.2d 934, 947 (D.C.Cir.1981); *Walter v. KFGO Radio,* 518 F.Supp. 1309, 1315 (D.N.D.1981); *Caldwell v. Hodgeman,* 25 Fair Empl.Prac.Cas. (BNA) 1647, 1649 (D.Mass.1981); *Continental Can Co. v. State,* 297 N.W.2d 241, 248 (Minn.1980); *see also* Note, *Sexual Harassment and Title VII,* 76 U.Mich.L.Rev. 1007, 1019 n.91 (1978). *See generally* Development, *New EEOC Guidelines on Discrimination Because of Sex: Employer Liability for Sexual Harassment Under Title VII,* 61 B.U.L.Rev. 535 (1981) (discussing development of guidelines in light of Title VII principles).

S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977); *Lee v. Conecuh County Board of Education,* 634 F.2d 959, 961–62 & n.3 (5th Cir. 1981). In proving a claim for a hostile work environment due to sexual harassment, therefore, the plaintiff must show that but for the fact of her sex, she would not have been the object of harassment. *See Bundy v. Jackson,* 641 F.2d at 942–43 (citing *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971); 29 C.F.R. § 1604.4(a) (1979)); *Tomkins v. Public Service Electric and Gas Co.,* 568 F.2d 1044, 1047 n.4 (3d Cir. 1977); Note, *Sexual Harassment and Title VII,* 76 U.Mich.L. Rev. 1007, 1019–20 & n.94 (1978) (citing *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 282 n.10, 96 S.Ct. 2574, 2579 n.10, 49 L.Ed.2d 493 (1976)).

In the typical case in which a male supervisor makes sexual overtures to a female worker, it is obvious that the supervisor did not treat male employees in a similar fashion. It will therefore be a simple matter for the plaintiff to prove that but for her sex, she would not have been subjected to sexual harassment. *See Bundy v. Jackson,* 641 F.2d at 942 n.7. However, there may be cases in which a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offensive to male and female workers. *See Barnes v. Costle,* 561 F.2d 983, 990 n.55 (D.C.Cir.1977); *Bradford v. Sloan Paper Co.,* 383 F.Supp. 1157, 1161 (N.D.Ala.1974); Note, *Sexual Harassment and Title VII, supra,* at 1020–21 & n.99, 1033 & n.178; Comment, *Sexual Harassment and Title VII,* 51 N.Y.U.L.Rev. 148, 151–52 (1976). In such cases, the sexual harassment would not be based upon sex because men and women are accorded like treatment. Although the plaintiff might have a remedy under state law in such a situation, the plaintiff would have no remedy under Title VII. *Cf. Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp. 523, 28 Empl.Prac.Dec. (CCH) ¶ 32,553 at 24,470–73 (D.D.C.1982) (sexual harassment may form basis for action for common law torts of invasion of privacy, assault and battery, and intentional infliction of emotional distress); *Kyriazi v. Western Electric Co.,* 461 F.Supp. 894, 950 (D.N.J.1978) (cause of action under New Jersey law for tortious interference with contract); *McPherson v. Employment Division,* 285 Or. 541, 558, 591 P.2d 1381, 1390 (1979) (employee may be able to collect state unemployment benefits if she is forced to resign because of intolerable harassment).

■ (4) *The harassment complained of affected a "term, condition, or privilege" of employment.* The former fifth circuit has held that the state of psychological well being is a term, condition, or privilege of employment within the meaning of Title VII. *Rogers v. EEOC,* 454 F.2d at 238. The court in *Rogers* made it clear, however, that the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not affect the terms, conditions, or privileges of employment to a sufficiently significant degree to violate Title VII. *Id.*[8] For sexual harassment to state a claim under Title VII, it must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. Whether sexual harassment at the workplace is sufficiently severe and persistent to affect seriously the psychological well being of employees is a question to be determined with regard to the totality of the circumstances. 29 C.F.R. § 1604.11(b) (1981); *see Calcote v. Texas Educational Foundation, Inc.,* 458 F.Supp. at 237; *Compston v. Borden, Inc.,* 424 F.Supp. 157, 158–61 (S.D.Ohio 1976).

**8.** *See also Cariddi v. Kansas City Chiefs Football Club, Inc.,* 568 F.2d 87, 88 (8th Cir. 1977); *Smith v. Amoco Chems. Corp.,* 20 Fair Empl. Prac.Cas. (BNA) 724, 726 (S.D.Tex.1979); *Pantchenko v. C.B. Dolge Co.,* 18 Fair Empl. Prac.Cas. (BNA) 686, 689 (D.Conn.1977), *aff'd in relevant part,* 581 F.2d 1052 (2d Cir. 1978); *Friend v. Leidinger,* 446 F.Supp. 361, 382 (E.D. Va.1977), *aff'd,* 588 F.2d 61 (4th Cir. 1978); *Dickerson v. United States Steel Corp.,* 439 F.Supp. 55, 75 (E.D.Pa.1977), *certified question answered,* 582 F.2d 827 (3d Cir. 1978); Note, *supra* note 7, at 1022–24. *Cf.* Comment, *Sexual Harassment and Title VII,* 51 N.Y.U.L.Rev. 148, 164 n.76 (1976) (single incident of sufficient severity may create hostile environment).

(5) *Respondeat superior.* Where, as here, the plaintiff seeks to hold the employer responsible for the hostile environment created by the plaintiff's supervisor [9] or co-worker, she must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Bundy v. Jackson*, 641 F.2d at 943 & n.8; *Vinson v. Taylor*, 23 Fair Empl.Prac.Cas. (BNA) at 41–42. The employee can demonstrate that the employer knew of the harassment by showing that she complained to higher management of the harassment, *Bundy v. Jackson*, 641 F.2d at 943; *Brown v. City of Guthrie*, 22 Fair Empl.Prac.Cas. (BNA) at 1633, or by showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge, *Taylor v. Jones*, 653 F.2d 1193, 1199 (8th Cir. 1981).[10]

In this case, Henson has made a prima facie showing of all elements necessary to establish a violation of Title VII. Dismissal of her claim was therefore erroneous. She is entitled to prove her claim on remand to the district court for a new trial.[11]

We note that Henson does not seek reinstatement to her position in the Dundee police department. It is therefore unlikely that Henson will be able to obtain an injunction to restrain practices at the police department which have injured her in the past but which no longer affect her. *Miller v. Texas State Board of Barber Examiners*, 615 F.2d 650, 654 (5th Cir.), *cert. denied*, 449 U.S. 891, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); *Compston v. Borden*, 424 F.Supp. at 162; *see Bundy v. Jackson*, 641 F.2d at 946 n.12. Additionally, Henson cannot recover damages for mental suffering or emotional distress under Title VII. *Garner v. Giarrusso*, 571 F.2d 1330, 1339 (5th Cir. 1978); *Shah v. Mount Zion Hospital & Medical Center*, 642 F.2d 268, 272 (9th Cir. 1981); *Bundy v. Jackson*, 641 F.2d at 946 n.12. She may, however, recover nominal damages if she prevails in the new trial and thereby become eligible for an award of attorneys fees. *Joshi v. Florida State Uni-*

9. We assume for purposes of this discussion that Sellgren was Henson's supervisor rather than her employer. If Sellgren was her employer, then the City of Dundee would be liable for his actions without the operation of respondeat superior. *See Heelan v. Johns-Manville Corp.*, 451 F.Supp. 1382, 1390 (D.Colo.1978). On remand, the parties should offer evidence on this point. *See generally* Ginsburg & Kroeski, *Sexual Advances by an Employee's Supervisor: A Sex Discrimination Violation of Title VII?*, 3 Employee Rel.L.J. 83, 92 (1977).

10. We note that Henson testified at trial that she complained of Sellgren's alleged harassment to the town manager of the City of Dundee. According to Henson's testimony, the manager not only failed to restrain Sellgren, but actually suggested that a sexual liaison between Henson and Sellgren would be mutually beneficial.

Our treatment of the respondeat superior issue in the case of sexual harassment that creates an offensive work environment differs from our treatment of the issue when sexual harassment results in tangible job detriment. *See infra* pp. 908–912.

11. Generally in cases of disparate treatment the employee may establish a prima facie case by means of a lesser evidentiary showing than that which would be necessary to prevail on the merits. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The role of the prima facie case in disparate treatment litigation is to shift the burden of production to the employer after the employee has eliminated the most common nondiscriminatory reasons for the adverse treatment to which the employee has been subjected. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). This procedure serves to "progressively sharpen the inquiry into the elusive factual question of intentional discrimination," *id.* at n.8, in a case where prohibited criteria and legitimate job related criteria often blend in the employment decision.

In contrast, the case of sexual harassment that creates an offensive environment does not present a factual question of intentional discrimination which is at all elusive. Except in the exceedingly atypical case of a bisexual supervisor, it should be clear that sexual harassment is discrimination based upon sex. We therefore see no reason to suggest a specific prima facie case for the hostile environment claim. In trying these cases, the district courts should employ normal principles of pleading and proof allocation. These principles may, in some cases, dictate that the allocation scheme vary in the individual case because of superior knowledge on the part of one party or other similar factors.

*versity*, 646 F.2d 981, 991 n.33 (5th Cir. 1981); *Dean v. Civiletti*, 28 Empl.Prac.Dec. (CCH) ¶ 32,438, at 23,918 (8th Cir. 1982).[12]

## II.

Henson asserts two other claims of sexual harassment, that she was constructively discharged from employment because of her sex and that she was denied the opportunity to attend the police academy because she refused Sellgren's sexual importunities. The district court dismissed each claim, largely because it disbelieved crucial portions of Henson's testimony regarding historical facts in the case. Henson now challenges the district court's conclusions and, indirectly, the court's subsidiary factual findings.

### A. *Standard of Review.*

■ Normally, the court of appeals in a civil rights case will respect a finding of historical fact premised upon a credibility choice made by the district court unless that finding is clearly erroneous. *E.g., Danner v. United States Civil Service Commission*, 635 F.2d 427, 430–31 (5th Cir. 1981); *Barnes v. Jones County School District*, 575 F.2d 490, 494 (5th Cir. 1978). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *North River Energy Corp. v. United Mine Workers of America*, 664 F.2d 1184, 1189 (11th Cir. 1981); *Causey v. Ford Motor Co.*, 516 F.2d 416, 420 (5th Cir. 1975).

Henson urges that the normal deference to the district court's findings is not warranted in this case because the district judge operated under an erroneous conception of the law regarding sexual harassment and work environment. *See, e.g., Johnson v. Uncle Ben's, Inc.*, 628 F.2d 419, 422 (5th Cir. 1980), *vacated*, 451 U.S. 902, 101 S.Ct. 1967, 68 L.Ed.2d 290, *aff'd on remand*, 657 F.2d 750 (5th Cir. 1981); *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1382 (5th Cir. 1978), *cert. denied*, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979). We disagree. The former fifth circuit has refused to apply the clearly erroneous standard only when the district judge is mistaken as to a controlling principle of law. In *Johnson v. Uncle Ben's, Inc.*, 628 F.2d at 419, for example, the factual findings by the district court were premised upon a legal misunderstanding of the probative value of statistics in employment discrimination cases. Since the district court assigned unduly little weight to statistical disparities in making its fact findings, those findings were themselves unreliable and were thus "entitled to no deference." *Id.* at 422.[13]

In this case, unlike *Uncle Ben's*, the district court's legal error did not involve a principle of law that was controlling with respect to either the constructive discharge or the police academy claims. The district court erred only in its legal theory that sexual harassment must be coupled with tangible job detriment in order to give rise to Title VII liability. This error warrants reversal on Henson's first claim for a hostile work environment as a matter of law. However, the error did not affect the district court's treatment of the remaining claims which specifically complain of sexual harassment coupled with tangible job detriment. Indeed, the district court applied the correct legal principles in passing upon Henson's remaining claims.[14] In his Memo-

---

12. *Accord, T & S Serv. Assocs. v. Crenson*, 666 F.2d 722, 728 n.8 (1st Cir. 1981); *Croker v. Boeing Co.*, 26 Empl.Prac.Dec. (CCH) ¶ 31,867, at 20,867 (E.D.Pa.1979); *Compston v. Borden*, 424 F.Supp. 157, 162 (S.D.Ohio 1976); *Stebbins v. Nationwide Mut. Ins. Co.*, 4 Empl.Prac.Dec. (CCH) ¶ 7576, at 5303 (E.D.Va.1971).

13. *See* C. Wright & A. Miller, Federal Practice & Procedure § 2585 (1971).

14. In concluding that the trial court used the correct standard in evaluating Henson's claims of *quid pro quo* sexual harassment, we implicitly reject a suggestion by the District of Columbia circuit that would alter the allocation of the burden of proof in cases such as this one. In *Bundy v. Jackson*, 641 F.2d 934, 952 (D.C.Cir.

randum of Law and Facts, the district judge cited *Heelan v. Johns-Manville Corp.*, 451 F.Supp. 1382 (D.Colo.1978), a decision which sets out the prima facie case for sexual harassment resulting in job detriment, as controlling authority.[15]

We proceed to determine whether the district court committed clear error in making findings of historical fact that warranted the dismissal of either remaining claim of sexual harassment coupled with tangible job detriment.

B. *Constructive Discharge*

■ In *Young v. Southwestern Savings & Loan Association*, 509 F.2d 140, 144 (5th Cir. 1975), the former fifth circuit determined that when "an employee involuntarily resigns in order to escape intolerable and illegal employment requirements" to which he or she is subjected because of race, color, religion, sex, or national origin, the employer has committed a constructive discharge in violation of Title VII. *See also Borque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir. 1980); *Calcote v. Texas Educational Foundation, Inc.*, 578 F.2d at 97; *Brown v. City of Guthrie*, 22 Fair Empl.

Prac.Cas. (BNA) at 1633–34. In this case, the judge disbelieved Henson's testimony that she resigned from the Dundee Police Department because of sexual harassment, finding instead that she resigned because the man with whom she had been having an affair was forced to resign from the department. *Cf. Privette v. Union Carbide Corp.*, 395 F.Supp. 372, 375 (W.D.N.C.1975) (court finds that the cause of plaintiff's resignation was unrelated to alleged harassment). Although the evidence on this point presents close questions of credibility and conflicting inferences, we cannot say that the finding of the district judge was clearly erroneous.

The evidence before the district court could reasonably support two entirely different versions of the events immediately preceeding Henson's resignation from the police department. Henson points to testimony showing that she and her coworker were the subjects of constant sexual harassment; that the harassment culminated on January 18, 1977 when Sellgren suspended her for two days after she brought food into the dispatch room in violation of a policy that had never before been enforced; that she became so upset by these events

1981), the court held that a defendant who had created an offensive work environment through sexual harassment must bear an onerous burden of persuasion to rebut the prima facie case of the employee who claims in addition that she was deprived of tangible job benefits due to sexual harassment. As authority for this novel allocation scheme, the court cited the decision of the fifth circuit in *Baxter v. Savannah Sugar Ref. Corp.*, 495 F.2d 437, 444–45 (5th Cir.), *cert. denied*, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974). We think that *Baxter* is distinguishable.

*Baxter* was a class action for systemwide discrimination against blacks with respect to pay and promotion. The class action was a bifurcated proceeding: in the first phase, the court determined whether the employer had violated Title VII with respect to the class, *id.* at 443; and in the second phase, the court determined whether an individual belonged to the class and was thus entitled to share in the class damages, *id.* at 444. In order to prevail at the first stage, the class was obliged to prove its case under the normal Title VII allocation scheme. At the second phase, however, an individual employee who claimed membership in the class and presented a prima facie case of damages was entitled to relief unless the em-

ployer could rebut the prima facie case by "clear and convincing evidence."

We think that this burden shifting procedure is peculiarly suited to the remedy phase of a Title VII action like *Baxter*. We would not apply the procedure in *Baxter* to the first phase of a disparate treatment case as *Bundy* suggests. Indeed, such an application may run afoul of the decision of the Supreme Court in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), which was handed down shortly after the decision of the District of Columbia circuit in *Bundy*. *See generally Johnson v. Uncle Ben's, Inc.*, 657 F.2d 750, 752–54 & n.3 (5th Cir. 1981) (discussing impact of *Burdine* on various types of civil rights claims); *Castaneda v. Pickard*, 648 F.2d 989, 994 n.2 (5th Cir. 1981) (*Burdine* alters law under Title VII but does not affect cases under Title VI in which the employer must under certain circumstances rebut the plaintiff's prima facie case with clear and convincing evidence).

15. For a discussion of the proper prima facie case for a *quid pro quo* sexual harassment claim, see *infra* note 22.

that she consulted an equal employment opportunity officer in the CETA program; that she consulted a physician who urged her to take sick leave; and that she resigned on January 28, 1977 after taking sick leave. The City of Dundee points to other record evidence indicating that in 1976 Henson began an affair with Robert Owens, a policeman with the Dundee Police Department; that Owens was under official pressure due to this affair because he was married at the time; that Owens was forced to resign because of the affair on January 12, 1977 and subsequently found work with the Davenport Police Department; that Henson told Owens of her intention to quit if the City of Dundee forced him to resign;[16] that Henson resigned on January 28, 1977 and tendered a letter to the town manager and Sellgren stating that she "sincerely enjoyed" working on the Dundee police force, but that due to "work conditions and job security," she would seek work elsewhere; and that several days later, she began work with the Davenport Police Department.

This record does not leave us with the "definite and firm conviction" that the district judge was mistaken in finding that Henson left her job with the police force because of Owens' resignation. *See Harp-*

ring *v. Continental Oil Co.,* 628 F.2d 406, 409 (5th Cir. 1980), *cert. denied,* 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981); *Welch v. University of Texas,* 659 F.2d 531, 534 (5th Cir. 1981). The district judge is, of course, the primary arbiter of Henson's credibility on the issue of her motive for resigning. Fed.R.Civ.P. 52(a); *Barnes v. Jones County School District,* 575 F.2d at 494; *see Pantchenko v. C. B. Dolge Co.,* 581 F.2d 1052, 1054 (2d Cir. 1978). Here, the judge's choice not to believe Henson on this issue must be respected not only because he was able to observe Henson's demeanor, but also because his choice is supported by other record evidence which suggests that Henson voluntarily quit because of Owens' resignation and that Henson had "sincerely enjoyed" the time she had spent in the police department.[17] The dismissal of the constructive discharge count must be affirmed.

### C. *Permission to attend the police academy*

■■ An employer may not require sexual consideration from an employee as a *quid pro quo* for job benefits.[18] *See, e.g., Miller v. Bank of America,* 600 F.2d 211 (9th Cir. 1979); *Tomkins v. Public Service*

---

16. Robert Owens was deposed under oath by the City of Dundee prior to trial. During the deposition, he testified that Henson told him that she intended to quit if he was fired. At trial, Owens testified that Henson had resigned because of sexual harassment by Sellgren. On cross-examination, the attorney for defendant asked Owens whether Henson had told him of her intention to resign if he was fired. Owens responded that Henson had never made such a statement. The attorney then read the deposition testimony to Owens, which Owens acknowledged. The district court could consider this testimony as substantive evidence under Fed.R.Evid. 801(d)(2) & (1)(A) because Henson's statement was an admission by a party-opponent and the deposition testimony was a prior inconsistent statement under oath by a witness.

17. Of course, Owens' testimony was by far the most damaging to Henson on this issue. Henson's statement in the letter of resignation that she enjoyed working at the police department did not necessarily imply that she found conditions there tolerable. Indeed, standing alone the statement could imply that she desired to continue working at the department, but decid-

ed not to do so because of the emotional impact of the harassment. *Cf. Young v. Southwestern Sav. & Loan Ass'n,* 509 F.2d 140, 144 (5th Cir. 1975) ("Mrs. Young enjoyed her work and Southwestern valued her services. The only possible reason for her resignation on September 15, 1971, was her resolution not to attend religious services which were repugnant to her conscience . . . .").

18. In her book on sexual harassment, Professor MacKinnon makes a useful distinction between harassment that creates an offensive environment ("condition of work") and harassment in which a supervisor demands sexual consideration in exchange for job benefits ("*quid pro quo*"). C. MacKinnon, Sexual Harassment of Working Women 32–47 (1979); *see* Kay & Brodsky, Book Review, 58 Texas L.Rev. 671, 679 (1980).

On a practical level, of course, there are many cases that could be characterized interchangeably as condition of work or *quid pro quo* cases. *See, e.g., Tomkins v. Public Serv. Elec. & Gas Co.,* 568 F.2d 1044, 1046 & n.1 (3d Cir. 1977).

*Electric & Gas Co.,* 568 F.2d at 1044; *Barnes v. Costle,* 561 F.2d at 983; *Garber v. Saxon Business Products, Inc.,* 552 F.2d 1032 (4th Cir. 1977) (per curiam); 29 C.F.R. § 1604.11(a) (1981). In order to establish a violation of Title VII on grounds of sexual harassment of this kind, an employee must prove a number of elements, many of which are similar to the proof required to establish the existence of a hostile or offensive work environment:

(1) *The employee belongs to a protected group.*

(2) *The employee was subject to unwelcome sexual harassment.*

(3) *The harassment complained of was based upon sex.*

(4) *The employee's reaction to harassment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment.* The acceptance or rejection of the harassment by an employee must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment in order to create liability under this theory of sexual harassment. 29 C.F.R. § 1604.11(a)(1) & (2) (1981). As in the typical disparate treatment case, the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision. *See Bundy v. Jackson,* 641 F.2d at 953; *Fisher v. Flynn,* 598 F.2d 663, 665 (1st Cir. 1979). *See generally Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *United States v. International Brotherhood of Teamsters,* 431 U.S. at 335 n.15, 97 S.Ct. at 1854 n.15.

(5) *Respondeat superior.* In a typical Title VII case, an employer is held liable for the discriminatory actions of its supervisors which affect the tangible job benefits of an employee on the basis of race, religion, or national origin. *See, e.g., Gay v. Board of Trustees of San Jacinto College,* 608 F.2d 127, 128 (5th Cir. 1979); *Young v. Southwestern Savings and Loan Association,* 509

F.2d at 144 n.7; *Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437, 441–42 (5th Cir.), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974); *Rowe v. General Motors Corp.,* 457 F.2d 348, 359 (5th Cir. 1972); *Friend v. Leidinger,* 588 F.2d 61, 69 (4th Cir. 1978) (Butzner, J., concurring in part and dissenting in part); *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1282 (7th Cir. 1977); *Anderson v. Methodist Evangelical Hospital, Inc.,* 464 F.2d 723, 725 (6th Cir. 1972); *Tidwell v. American Oil Co.,* 332 F.Supp. 424, 436 (D.Utah 1971); *cf. Northside Realty Associates, Inc. v. United States,* 605 F.2d 1348, 1353 (5th Cir. 1979) (corporation liable for violations by its agents of Fair Housing Act of 1968); *Barnes v. Costle,* 561 F.2d at 993 (employer strictly liable under Title VII for discriminatory practices of supervisory personnel but may be relieved from responsibility if conduct is against employer's policy and prompt remedial action taken upon notice of discriminatory conduct). The reason for this stern rule is readily apparent:

When [the employer gave] its [supervisory personnel] authority to fire employees, it also accepted responsibility to remedy any harm caused by [the supervisors'] unlawful exercise of that authority. The modern corporate entity consists of the individuals who manage it, and little, if any, progress in eradicating discrimination in employment will be made if the corporate employer is able to hide behind the shield of individual employee action.

*Tidwell v. American Oil Co.,* 332 F.Supp. at 436 (citation omitted).

It necessarily follows from this premise that an employer is strictly liable for sexual discrimination by supervisors that causes tangible job detriment. *See Willingham v. Macon Telegraph Publishing Co.,* 507 F.2d 1084, 1091 (5th Cir. 1975) (en banc). "Discrimination against women is no less serious than other forms of prohibited employment practices and is to be accorded the same degree of social concern given to any type of unlawful discrimination." H.R.Rep. No. 238, 92d Cong., 1st Sess. 5 (1971), *reprinted in* 1972 U.S.Cong.

& Ad.News 2137, 2141. Sexual harassment resulting in tangible job detriment is a form of sex discrimination every bit as deleterious to the remedial purposes of Title VII as other unlawful employment practices. We hold that an employer is strictly liable for the actions of its supervisors that amount to sexual discrimination or sexual harassment resulting in tangible job detriment to the subordinate employee. *See Miller v. Bank of America*, 600 F.2d at 213; 29 C.F.R. § 1604.11(c) (1981); 45 Fed.Reg. 74,676–77 (Nov. 10, 1980) (commentary issued in conjunction with proposed E.E.O.C. guidelines on sexual harassment). *But see Tomkins v. Public Service Electric & Gas Co.*, 568 F.2d at 1048–49 (requiring actual or constructive knowledge of supervisor's conduct and failure to take remedial action before holding employer liable for sexual harassment involving tangible job detriment).[19]

We recognize that this holding requires differing treatment of respondeat superior claims in the two types of sexual harassment cases. In the classic *quid pro quo* case an employer is strictly liable for the conduct of its supervisors, while in the work environment case the plaintiff must prove that higher management knew or should have known of the sexual harassment before the employer may be held liable. The rationale underlying this difference in the treatment of the two cases is easily stated. The environment in which an employee works can be rendered offensive in an equal degree by the acts of supervisors, *see Bundy v. Jackson*, 641 F.2d at 943; *Compston v. Borden*,

424 F.Supp. at 160–61, coworkers, *Friend v. Leidinger*, 588 F.2d at 68 (Butzner, J., concurring in part and dissenting in part), or even strangers to the workplace, *EEOC v. Sage Realty Corp.*, 507 F.Supp. 599, 609–10 & n.16 (S.D.N.Y.1981); 29 C.F.R. § 1604.-11(e) (1981). The capacity of any person to create a hostile or offensive environment is not necessarily enhanced or diminished by any degree of authority which the employer confers upon that individual. When a supervisor gratuitously insults an employee, he generally does so for his reasons and by his own means. He thus acts outside the actual or apparent scope of the authority he possesses as a supervisor. His conduct cannot automatically be imputed to the employer any more so than can the conduct of an ordinary employee.[20]

The typical case of *quid pro quo* sexual harassment is fundamentally different. In such a case, the supervisor relies upon his apparent or actual authority to extort sexual consideration from an employee. Therein lies the *quid pro quo*. In that case the supervisor uses the means furnished to him by the employer to accomplish the prohibited purpose. He acts within the scope of his actual or apparent authority to "hire, fire, discipline or promote." *Miller v. Bank of America*, 600 F.2d at 213; *see Calcote v. Texas Educational Foundation, Inc.*, 578 F.2d at 98. Because the supervisor is acting within at least the apparent scope of the authority entrusted to him by the employer when he makes employment decisions, his conduct can fairly be imputed to the source of his authority.[21]

---

**19.** We reject the argument in *Tomkins* that an employer may escape "responsibility" for sexual harassment of this type merely by taking subsequent remedial action. Such action by the employer may, of course, mitigate damages, but it in no way affects an employer's liability.

**20.** *See Taylor v. Jones*, 653 F.2d 1193, 1199 (8th Cir. 1981); *Vinson v. Taylor*, 23 Fair Empl. Prac.Cas. (BNA) 37, 42 (D.D.C.1980); E.E.O.C. Dec. No. 70 -432, [1968–1973] CCH EEOC Dec. ¶ 6130 (Jan. 19, 1970); Seymour, *Sexual Harassment: Finding a Cause of Action under Title VII*, 30 Lab. L.J. 139, 147–49 (1979). *But see Lucero v. Beth Israel Hosp. & Geriatric Center*, 479 F.Supp. 452, 455 (D.Colo.1979);

E.E.O.C. Dec. No. 81–18, 27 Fair Empl.Prac. Cas. (BNA) 1793, 1802, 1805 (April 3, 1981).

Under the rule in this case, employer responsibility for the acts of a supervisor in creating an offensive environment is coextensive with its liability for the acts of an employee. Under the E.E.O.C. regulations, an employer is responsible for the acts of its employees if the employer "knows or should have known of the conduct [and does not take] immediate and appropriate corrective action." 29 C.F.R. § 1604.11(d) (1981).

**21.** The common law rules of respondeat superior will not always be appropriate to suit the broad remedial purposes of Title VII. *See*

In this case, Henson has alleged all of the elements of a quid pro quo sexual harassment claim.[22] The district judge, however, did not believe Henson's testimony that Sellgren insisted upon sexual favors as a condition to her attendance at the academy. He did not specify whether his credibility choice was based upon demeanor or lack of corroborating evidence. However, he found that two circumstances which would have corroborated Henson's story did not exist. Specifically, he found that Sellgren had never sexually propositioned Henson's female coworker, Dicks, and that no male dispatcher had ever attended the police academy.

Both of these specific factual findings are clearly erroneous. There is no evidence whatever in the record indicating that Sellgren did not proposition Dicks. Indeed, when Henson's attorney sought to question Dicks on this very subject, the judge sustained the defendant's objection to the testimony on relevancy grounds.[23] Also, un-

Note, *supra* note 7, at 1026–29. In this case, however, the imposition of liability upon an employer for *quid pro quo* sexual harassment committed by supervisors appears to be in general agreement with common law principles. *See* Restatement (Second) of Agency § 219(2)(d) (master is liable for tort of his servant if the servant "was aided in accomplishing the tort by the existence of the agency relation"). *But cf. Barnes v. Costle*, 561 F.2d 983, 995 (D.C.Cir.1976) (McKinnon, J., concurring) (supervisor not acting within apparent scope of employment when he extorts sexual consideration from subordinate in exchange for favorable job action).

**22.** For the benefit of the district court on remand, we will discuss the elements of a prima facie case for *quid pro quo* sexual harassment. The prima facie case is, of course, a variation upon the pattern established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 & n.13, 93 S.Ct. 1817, 1824–25 & n.13, 36 L.Ed.2d 668 (1973). The District of Columbia circuit in *Bundy v. Jackson*, 641 F.2d 934, 953 (D.C.Cir. 1981), proposed the following formula:

To establish a prima facie case of illegal denial of promotion in retaliation against the plaintiff's refusal of sexual advances by her supervisors, the plaintiff must show (1) that she was a victim of a pattern or practice of sexual harassment attributable to her employer . . . and (2) that she applied for and was denied a promotion for which she was technically eligible and of which she had a reasonable expectation.

The court for the district of Colorado in *Heelan v. Johns-Manville Corp.*, 451 F.Supp. 1382, 1389 (D.Colo.1978), proposed a similar formula:

[A] plaintiff must plead and prove that (1) submission to sexual advances of a supervisor was a term or condition of employment, (2) this fact substantially affected plaintiff's employment, and (3) employees of the opposite sex were not affected in the same way by these actions.

(footnote omitted). The formula in *Heelan* was cited by the district judge in this case and by the courts in *Meyers v. I. T. T. Diversified*

*Credit Corp.*, 527 F.Supp. 1064, 1068 (E.D.Mo. 1981), and in *Hall v. F. O. Thacker Co.*, 24 Fair Empl.Prac.Cas. (BNA) 1499, 1503 (N.D.Ga. 1980).

We would phrase the prima facie case in terms that more closely track *McDonnell Douglas*, although our version is not substantially different from those of the other two courts:

(1) The employee is a member of the protected class;

(2) She was subjected to unwelcome sexual harassment to which members of the opposite sex had not been subjected;

(3) She applied and was qualified for a position for which the employer was accepting applications;

(4) That despite her qualifications she was rejected;

(5) That after her rejection, the position remained open and the employer continued to accept applicants who possessed complainant's qualifications.

While the above prima facie case is applicable to Henson's claim on remand, the prima facie case may vary depending upon the specific facts. *McDonnell Douglas v. Green*, 411 U.S. at 802 n.13, 93 S.Ct. at 1824 n.13. Specifically, there will be cases in which submission to unwelcome sexual advances is an express or implied condition to the receipt of a job benefit. 29 C.F.R. § 1604.11(a)(1). In such cases, an employee need not prove as part of the prima facie case that she actually applied for a given position since such an application would have been futile. *Cf. International Bhd. of Teamsters v. United States*, 431 U.S. 324, 367, 97 S.Ct. 1843, 1870, 52 L.Ed.2d 396 (1977) (plaintiff who was deterred from applying for position because of employer's known discrimination policies is not barred from relief).

**23.** After Henson's attorney asked Dicks whether Sellgren had ever made advances toward her, the attorney for the City of Dundee objected on grounds that Sellgren's reputation was not in issue. The court sustained the objection, stating:

The trouble is that discrimination on account of sex means on account of because

disputed testimonial and documentary evidence proved that two male dispatchers hired by the City of Dundee under the CETA program were sent to the police academy at the same time that Henson actively sought to attend.[24]

■ This court is, of course, loathe to reevaluate a factual finding based upon a credibility choice of the district judge. *See Barnes v. Jones County School District*, 575 F.2d at 494. In this case, however, there is a substantial risk that the district judge based his evaluation of Henson's credibility upon a clearly erroneous view of the availability of corroborating evidence.[25] When the finder of fact proceeds upon a faulty theory to assess credibility, its finding based solely upon that assessment cannot stand.[26] *Custom Recovery, Division of Keystone Resources v. NLRB*, 597 F.2d 1041, 1045 (5th Cir. 1979).[27] Here, the district judge's thorough misapprehension of the factual situation surrounding Henson's testimony on the issue of the police academy assignment prevents us from deferring to his credibility finding. We conclude that Henson is entitled to a new trial on her claim for sexual

she is a female. You understand that. Under the statute females are treated differently than males in wages, hours of employment, advancement, opportunities—all those sorts of things, but essentially advancement of somebody other than the Plaintiff I don't think is material or relevant to this case. It might be, depending on what he says afterward. I am not sure. I will sustain the objection at this point. You have already indicated his general course of conduct and his language, et cetera. I will sustain that objection. If he should testify and say that he never did this with this Plaintiff or anybody else then they would have an opportunity to testify.

Of course, Sellgren never testified because the district judge granted the defendant's motion for involuntary dismissal and Dicks was never allowed the opportunity to answer the question.

24. Specifically, Robert Parnell and William Young who were both male dispatchers were allowed to attend the academy. This was proven through undisputed testimony by Henson, Dicks, and Robert Owens. The personnel files of both men that were introduced into evidence by Henson also showed that they attended the police academy.

25. We note that in a case of alleged sexual harassment which involves close questions of credibility and subjective interpretation, the existence of corroborative evidence or the lack thereof is likely to be crucial. In this case, for all we know, the judge based his credibility finding wholly upon his erroneous perception of the lack of corroborating evidence. *Cf. Hall v. F. O. Thacker Co.*, 24 Fair Empl.Prac.Cas. (BNA) 1499, 1503 (N.D.Ga.1980) (district judge did not credit plaintiff's testimony on sexual advances because it was "virtually uncorroborated"); *Neidhardt v. D. H. Holmes Co.*, 21 Fair Empl.Prac.Cas. (BNA) 452, 457 (E.D.La.1979), *aff'd mem.*, 624 F.2d 1097 (5th Cir. 1980) (the district judge did not believe plaintiff's account of sexual harassment because "there is not a scintilla of credible evidence to corroborate [plaintiff's] version"); E.E.O.C. Dec. No. 81–23, 27 Fair Empl.Prac.Cas. (BNA) 1816, 1819 (June 3, 1981) (no reasonable cause to support claim of sexual harassment because there was "absolutely no evidence that her supervisor had ever subjected any other employees to sexual advances ... [and because] no other corroborative evidence exist[ed] to substantiate the Charging Party's claim that her supervisor made sexual advances toward her").

26. Additionally, the former fifth circuit has made it clear that the court of appeals will not permit the district court to " 'bootstrap' its findings and conclusions by stating that they are based upon credibility ...." *Marable v. H. Walker & Assocs.*, 644 F.2d 390, 397 (5th Cir. 1981). While *Marable* is instructive on the appropriate relation between the district court and the court of appeals on matters regarding credibility, it does not control our decision here. In *Marable*, there were documents and undisputed testimony that established the plaintiff's right to recover irrespective of the weight accorded the plaintiff's personal testimony. That is not the case here since Henson's testimony is crucial to establishing whether Sellgren demanded sexual consideration from her.

27. We recognize that *Custom Recovery* is a case in which the factual findings of an administrative agency were overturned because of a faulty theory of evaluating a witness' credibility. We think that the policy considerations behind this rule are equally forceful in the context of a district court's factual findings that are based on an incorrect credibility theory. *Cf. NLRB v. J. M. Mach. Corp.*, 410 F.2d 587, 590 (5th Cir. 1969) ("[i]t is generally held that whether made by jury, judge or agency a determination of credibility is nonreviewable unless there is uncontrovertible documentary evidence or physical fact which contradicts it" (citations omitted)).

harassment which allegedly prevented her from attending the police academy.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH IN-STRUCTIONS.

CLARK, Circuit Judge, concurring in part and dissenting in part:

Although I agree with most of the majority opinion, I dissent from several of its conclusions. First, I take issue with the majority's statement that "[w]here, as here, the plaintiff seeks to hold the employer responsible for the hostile environment created by the plaintiff's supervisor or coworker, she must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action." Majority opinion at 905 (footnote omitted). I agree with this statement insofar as it applies to *coworkers*, but I believe that the majority is incorrect to apply the "know or should have known" requirement to situations where the hostile environment is created by the plaintiff's *supervisor*.

"Sexual harassment" is defined by 29 C.F.R. § 1604.11(a)(3) to include "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or *creating an intimidating, hostile, or offensive working environment*." (Emphasis added.) Subsection (c) of 29 C.F.R. § 1604.11 provides that an employer "is responsible for its acts and those of its ... *supervisory employees* with respect to sexual harassment ... regardless of whether the employer knew or should have known of their occurrence." Subsection (d) provides, however, that an employer is not liable for acts of sexual harassment by coworkers unless the employer knew or should have known of the conduct.

These regulations made a clear distinction between a hostile environment created by a supervisor and one created by a coworker, and provide that the employer is liable in the former situation regardless of

whether it "knew or should have known" of the unlawful conduct. I would hold that a woman in the workplace should be able to obtain relief against an employer when her supervisor creates a hostile working environment without having to prove that the employer knew about it. An employer delegates certain responsibilities to its supervisors, one of which certainly is to create a pleasant working environment. If the supervisor uses his position to create a hostile, sexually harassing work environment, the employer should be liable.

In support of its statement, the majority cites *Bundy v. Jackson*, 641 F.2d 934, 943 & n.8 (D.C.Cir.1981), and *Vinson v. Taylor*, 23 Fair Empl.Prac.Cas. (BNA) 37, 41–42 (D.D. C.1980). *Vinson*, however, did not involve a hostile environment created by the plaintiff's supervisor. Moreover, in *Bundy* the employer "had full notice of harassment committed by agency supervisors and did virtually nothing to stop or even investigate the practice." 641 F.2d at 943. Thus, the *Bundy* court was not faced with the question whether an employer is liable for its supervisor's creation of a hostile environment when the employer is unaware of the supervisor's actions; *Bundy* merely held the employer liable where it was aware of the supervisor's actions. Furthermore, the *Bundy* opinion quotes with approval the regulations, 29 C.F.R. § 1604.11, that specifically state that the "employer is responsible for discriminatory acts of its ... supervisory employees with respect to sexual harassment ... regardless of whether the employer ... knew or even should have known of the acts...." 641 F.2d at 947. In view of these facts, I believe that the majority has misread *Bundy* and *Vinson*.

I also differ with the statement by the majority that "[t]he capacity of any person to create a hostile or offensive environment is not necessarily enhanced or diminished by the degree of authority which the employer confers upon that individual." Majority opinion at 910. In my opinion, that is not a correct assumption. Clearly, a supervisor by virtue of his position is enhanced in his ability to create an offensive environment

when compared to the janitor, for example. When a supervisor creates such an environment, women employees are not apt to complain for fear of retaliation.

In summary, I disagree with the "knew or should have known" restriction placed on the liability of an employer for a hostile environment created by a supervisor. I note that the majority's holding on this issue is unnecessary to the decision in this case because here the employer had actual notice of the supervisor's unlawful acts. In such situations, the employer is always liable. I would prefer that we not address this issue until faced with a case where we must decide it. Since the majority has chosen to address the issue in this case, I must dissent from the majority's conclusion. I would hold that when a supervisory employee creates a hostile or offensive work environment through sexual harassment, the employer is liable regardless of whether it knew or should have known of the supervisor's actions. To this extent, I dissent.