823 F.2d 548
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Sharon RHODES, Appellant,
v.
CITY OF LINCOLNTON, NORTH CAROLINA, a municipality, and
George E. Heavner, individually and in his
official capacities, Appellees.
 No. 86-1052
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 13, 1986.
Decided July 6, 1987.
 
 Michael A. Sheely (Russell, Sheely & Hollingsworth, on brief), for appellant.
 Charles F. Vance, Jr. (M. Ann Anderson; James G. Murphy; Womble, Carlyle, Sandridge & Rice; C. E. Leatherman, on brief), for appellees.
 Before ERVIN and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge
 PER CURIAM:
 
 
 1
 When old friends come to a parting of the ways, they sometimes meet again as contestants in a lawsuit in which each seeks vindication of his position. This is such a case, and the controversy is cast in terms of a constructive discharge on the basis of sexual bias in violation of Title VII and of Sec. 1983, the use of unlawful force in violation of Sec. 1983, and numerous pendent state law tort claims.
 
 
 2
 The court found for the defendants on the Title VII claim, and dismissed all of the other claims.
 
 I.
 
 3
 Sharon Rhodes was employed by the City of Lincolnton, North Carolina for approximately ten years. For the last eight of those years, she was an assistant in the Finance Department where her supervisor was George Heavner, the finance director. At various times, there were one to four other women employed in the department; Heavner never employed a male assistant.
 
 
 4
 The Finance Department was a casual, informal, sometimes rowdy, workplace. The people there were wont to tease and taunt each other. Heavner and Rhodes shared the same office. They quarreled with some frequency, and the arguments on each side were sprinkled with profanity. At times, Heavner made derogatory comments about women in general and Rhodes in particular, to which she often responded in kind.
 
 
 5
 It all seems to have been in good fun, however. Rhodes never complained about the atmosphere in the workplace, and Heavner condoned her frequent tardiness, though other female employees found that a source of irritation. Indeed, the office association of these childishly contentious people might have lasted another eight years had it not foundered upon an argument over an old coin.
 
 
 6
 Rhodes and Heavner were both collectors of old coins. One day, when Rhodes was counting the money in another employee's cash drawer, she came upon an old quarter. She told Heavner about it, but refused his request to see the coin because of fear, she testified, that he might keep it. After persistent refusals, Heavner seized her wrist and attempted to pry open her fist. When Heavner desisted and released her hand, her hand was red and her palm showed imprints of her fingernails.
 
 
 7
 Rhodes complained to the city manager. Heavner apologized for his conduct, and Rhodes apparently accepted it, though she complained that the apology should have been made first to her rather than to her fiance. When the city manager later inquired of her about it, she informed him that everything was all right and she just wished to forget the incident.
 
 
 8
 About three months later, Heavner and Rhodes got into another argument. Rhodes and Deborah Curry had agreed to work overtime that day, but at 5 o'clock that afternoon Curry refused to stay late and announced she was leaving. Heavner and Curry argued about the matter, but Curry left. Heavner then turned to Rhodes. He thought she should have backed him up in his argument with Curry and her failure to do so was indicative of her lack of loyalty. The argument was concluded when Rhodes announced that she was quitting.
 
 
 9
 After a charge had been processed by the EEOC, Rhodes filed this action against the City of Lincolnton and Heavner. She alleged that she had been constructively discharged because of her sex in violation of Title VII and Sec. 1983. She alleged that Heavner had used unlawful force upon her in the tussle about the old coin and in the argument about Curry. There were pendent state law claims charging assault, battery and intentional and negligent infliction of emotional distress.
 
 
 10
 After a full trial, the district court dismissed all claims but the Title VII claim, and concluded that with a finding that there had been no constructive discharge.
 
 II.
 
 11
 A woman can make out a claim of constructive discharge in violation of Title VII if she can show that she resigned or quit because of intolerable conditions imposed upon her by a sexually biased employer motivated by the bias. Brown v. Eckerd Drugs, 663 F.2d 1268, 1272 (4th Cir. 1981), vacated on other grounds, 457 U.S. 1128 (1982); Henson v. City of Dundee, 682 F.2d 897, 907 (11th Cir. 1982). The question is for the district court, and its finding must be accepted here unless clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564 (1985).
 
 
 12
 The evidence abundantly supports the finding that there was no constructive discharge. She seems simply to have quit after a heated argument with Heavner about her loyalty or lack of loyalty to him. Even if she reasonably feared that Heavner might become violent during the argument, the potential for violence was not shown to have any relation to sex. Similarly, the tussle over the old coin was sexually neutral.
 
 
 13
 Another person might have found the contentiousness in the Finance Department intolerable, but Rhodes had not found it so. For approximately eight years, she apparently thrived upon it, giving as much as she took. She never voiced a complaint until the coin incident, and that was a dispute between rival coin collectors. There was no sexual connotation.
 
 
 14
 Heavner had the right to choose his subordinates. He always hired women. There was never a male subordinate. There is nothing to suggest that Heavner wanted to get rid of Rhodes because of her sex. Fellow workers described the relationship between Heavner and Rhodes as that of brother and sister who enjoyed vigorous arguments with each other. Rhodes admitted that she was the initiator of some of the horseplay with Heavner and teasing of him. The district judge correctly observed that they were two childish employees intent upon their own bickering and shenanigans.
 
 III.
 
 15
 The district court mistakenly dismissed the Sec. 1983 claim of the use of unlawful force upon the ground of Title VII preemption. If Heavner, the state actor, employed force upon Rhodes that was so extreme or aggravated as to amount to a constitutional tort, a Sec. 1983 claim would have been made out. The right to be free of such violence is not dependent upon the employment relationship with which Title VII is solely concerned. See Kidd v. O'Neil, 774 F.2d 1252, 1258 (4th Cir. 1985). The error was clearly harmless, however, for neither the battery that was inflicted in the tussle over the coin nor the assault that allegedly occurred on the afternoon of Rhodes' departure was so excessive or extreme as to amount to a violation of any federal constitutional right. See Justice v. Dennis, 793 F.2d 573, 576-77 (4th Cir. 1986), reh'g granted, 802 F.2d 1486 (4th Cir. 1986); Kidd, 774 F.2d at 1257-61.
 
 IV.
 
 16
 The district court dismissed the constructive discharge claim under Sec. 1983 likewise because it believed Title VII preempts such a claim. In another pending case, a panel of this court is called upon to resolve the question whether the enactment of Title VII precludes use of Sec. 1983 as a remedy for discrimination in employment. We need not address that question here, for there is no triable issue of discrimination based upon sex for submission to a jury or other fact-finder.
 
 
 17
 As we have seen, Heavner and Rhodes had frequent arguments and bickerings. He sometimes called her a bitch and she sometimes called him a son of a bitch, but the record is completely devoid of any suggestion of unseemly touching or objectionable or suggestive sexual advances or references. The two incidents which apparently brought the employment relation to an end had nothing to do with sex. They argued about the old coin and perceived lack of loyalty of Rhodes to Heavner when she failed to support him in his argument with Curry. Heavner staffed his office exclusively with female subordinates. He hired no males, and there is not the vaguest suggestion that he wished to be rid of Rhodes in order to replace her with a man. In short, there was no basis for a finding that the conditions which Rhodes may have finally found to have become intolerable had anything to do with sex.
 
 
 18
 Since all of the evidence was presented, dismissal of the employment discrimination claim under Sec. 1983, if error at all, was clearly harmless. The defendants were entitled to judgment as a matter of law, for there was no basis for a finding of constructive discharge because of plaintiff's sex.
 
 V.
 
 19
 Finally, there was no error in the dismissal of the pendent state law claims at a time when the insubstantiality of the federal claims had become apparent. There was no abuse of discretion in the dismissal of the pendent state claims. United Mine Workers v. Gibbs, 383 U.S. 715 (1966).
 
 
 20
 AFFIRMED.