Kathryn FOX, Plaintiff,

v.

RAVINIA CLUB, INC. and Club Corporation of America, Defendants.

Civ. A. No. 1:89–CV–1527–RLV.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 1, 1991.

Spencer Gandy, Atlanta, Ga., for plaintiff.

Forrest W. Hunter and Charles L. Gregory, Atlanta, Ga., and Douglas Robison, Dallas, Tex., for defendants.

## ORDER

VINING, District Judge.

After carefully considering the report and recommendation of the magistrate, the trial transcript, and the objections to the magistrate's report and recommendation, the court hereby adopts the report and recommendation as the opinion and order of this court.

SO ORDERED.

## SPECIAL MASTERS REPORT

JOHN R. STROTHER, Jr., United States Magistrate Judge.

The plaintiff brought this action alleging that she was subjected to sexual harassment and was terminated due to her complaints as to the sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f). A trial was held in this action on June 29, July 2, July 3, and July 6, 1990. The parties' post trial briefs were filed on October 1, 1990. This action is now ripe for review.

## FINDINGS OF FACT

Prior to her job in Atlanta, the plaintiff was employed by the Rockford Club in Rockford, Illinois, a Club Corporation of America (CCA) subsidary. In August, 1986, she accepted a position as membership secretary with the Ravinia Club in Atlanta. No one discussed it with her supervisor in Illinois, John Guy, prior to offering her a position in Atlanta. Guy had problems with the plaintiff while she worked with him, due to her difficulties with working with other employees. The plaintiff had complained of inappropriate actions by a female co-worker while working for Guy. An investigation was made and it was concluded that the plaintiff had overreacted. The plaintiff's abilities as a membership secretary in obtaining and keeping members were excellent both at the Ravinia and at the club in Rockford. (Tr. 571).

The plaintiff was terminated from the position in Atlanta on August 3, 1987. The plaintiff now works for Ashford Club. She has also complained of sexually offensive conduct of co-workers at this job. The court makes no finding as to the inappropriateness or appropriateness of the conduct in question at her current employment.

The plaintiff accepted the position in Atlanta, allegedly with the understanding that she was guaranteed a promotion to regional management. However, whatever the plaintiff may have believed, the court finds that any promotion was to be based on her satisfactory job performance as a membership secretary with the Ravinia Club. The court does not find that she was to automatically be promoted. (Tr. 563–64).

The plaintiff's duties in the Ravinia Club as the Membership Secretary included supervision of the receptionist, supervision of Assistant Membership Secretaries, and staff training as to member relations.

Both sides agree that the financing of the Ravinia Club was unusual because CCA would be liable for substantial monetary penalties if the Ravinia Club failed to obtain $1.2 million in initiation deposits by October 27, 1987. This put a great deal of pressure on the club employees and this caused stress among the employees of the club.

The plaintiff worked under the supervision of the Ravinia Club Manager, Charles E. Cowart, who was supervised by CCA's Regional Manager, George Oestreich. Oestreich reported to Randy Williams, Vice President of Development for CCA. Most of plaintiff's allegations of harassment are aimed at Cowart, though she also alleges some harassment by Oestreich and Williams. Plaintiff also worked under the supervision of Monica DeLaTorre, a CCA Club Development Officer based in Dallas Texas, who was in charge of membership. DeLaTorre made frequent visits to the Ra-

vinia and was also frequently in contact by telephone with the club. The plaintiff was also under Marcia Mayes who was the "team leader" for the Ravinia Club project and Vice President of Development of CCA.

Initially, the plaintiff performed satisfactorily as a membership secretary. The only employees at the club when the plaintiff began to work there were the plaintiff, Cowart, and Eva Jacobson. However, as more employees were hired beginning in February, 1987, and after the Club opened in April, 1987, Cowart and Oestreich, began to receive more and more complaints concerning the plaintiff by her co-workers. The plaintiff's own witnesses stated that she was hard to work with due to the tense atmosphere and her treatment of employees. (Tr. 69–70). One of the plaintiff's witnesses, Swope, complained to Cowart concerning the plaintiff at the time they worked with her. (Tr. 86). The plaintiff was upset at not receiving the promotion she had been promised and made negative comments concerning management decisions, the management by CCA and Ravinia Club, including Cowart's management style and her belief she was not sufficiently compensated. Despite all of these problems, there is no question that the plaintiff's skills as a membership secretary, in gaining and keeping members, were excellent.

The court finds that the plaintiff is "straight-laced" and professional in her work. (See Tr. 617). The plaintiff's nononsense style of management was somewhat abrupt or aloof to those who worked with her and contrasted to a more informal and relaxed style of Cowart. This fact also caused stress between the plaintiff and Cowart. This was heightened by the fact the plaintiff made negative comments concerning Cowart to two friends and colleagues of Cowart's at a meeting in January, 1987 in Orlando, Florida. Cowart was eventually told of the criticism of him by the plaintiff and at that point the relationship between the plaintiff and Cowart further deteriorated. Prior to that point, Cowart had discussed some things, which would be considered personal, with the plaintiff while at lunch or dinner during work. Though the court finds that some of the discussions with the plaintiff may have concerned some of the personal life of Cowart, though not necessarily to the extent testified to by the plaintiff, the court does not find that the discussions were harassing in nature. The plaintiff also felt that she was harassed because Cowart would not let the third person in the office go to dinner or lunch with them. However, at the time, there were only three persons in the office and one person had to stay in the office to answer telephone inquiries during lunch, so that all three persons could not be gone at the same time. The plaintiff and other witnesses maintained that Oestreich and Cowart made jokes about women when together at the office. The plaintiff maintains that, among other instances, Cowart told her she could hang a red light over her desk to get members. She alleges Williams told her she should sleep with someone to get a promotion, could by sleeping with prospective members to get them to join, and wear "knee pads," which she took to mean perform oral sex to get members. (Tr. 211–15). There was also testimony that a black female receptionist was hired so that Williams could sleep with her. Williams testified that none of the statements were made by him and that the receptionist was not hired for him.

The plaintiff maintains that she complained to Monica DeLaTorre of Cowart's sexually offensive behavior, as well as that of Oestreich. The complaints culminated in a telephone call in July, 1987. While Ms. DeLaTorre did not recall the conversation, there is evidence from other witnesses that a call was made. (Tr. 46–47, 205, 452–53). However, DeLaTorre testified that she had never received any complaints of sexual harassment as to Cowart or Oestreich at any point. The court finds that some type of complaint of what plaintiff perceived to be harassment was made in a phone call to DeLaTorre. However, the court finds that in fact no such harassment existed. There was some joking at sales meetings or in the office, which may have been somewhat, but not extensively, sexual in nature. While

the plaintiff's witnesses testified jokes were made, only one specific joke was recalled. (Tr. 115–16). This was a joke involving an elderly couple having sex in the doctor's office because Medicare paid for the visit to the doctor and the net expense was less than the cost of a hotel room. (See Tr. 275). Other witnesses testified the meetings did not involve derogatory remarks concerning women. (Tr. 420–31, 611). The court does find that the plaintiff may have felt that her co-employees acted improperly or unprofessionally and in some cases this may have been accurate. However, the court finds that the joking was not extensively derogatory toward the women in the office and not sufficiently harassing in nature to be actionable under Title VII. The jokes referred to as derogatory were not specifically remembered by plaintiff and the other witnesses. (Tr. 115–16). There was some teasing such as speaking of women drivers. (Tr. 50). The court does not find that sexual harassment was involved and does not find that the more outrageous statements and actions alleged by the plaintiff to have in fact occurred. The plaintiff did not remember these actions until the date of trial, despite remembering lesser actions in detail prior to that date. (Tr. 163, 197, 269–74). Thus, the court must find that they are not credible. No other employees testified that such outrageous conduct or remarks were ever seen or heard. There is no indication, other than the plaintiff's feelings, that Cowart ever made any sexual advances toward her in any way. Cowart could well have been attracted to the plaintiff. Cowart possibly wanted the relationship to be friendly and perhaps romantic but his actions did not amount to sexual harassment. The court finds that on one occasion he said to her, "You cold northern bitch. Why don't you give us southern boys a break and say yes once in a while?" (Tr. 197). However, the court finds that this was not necessarily meant in a sexual way.

Because of the pressure on the job, and perhaps what she perceived as harassment, the plaintiff became hysterical while at work on one occasion and had to leave the office. This did not involve any reaction to conduct by Cowart or the other male employers. DeLaTorre and Oestreich spoke with the plaintiff and took her to Dr. Ostrowski for counselling at this time. She was given leave from work and allowed to work out of her home on projects at that time. Between April and July, 1987, she underwent counseling by a clinical psychologist.

On approximately July 29, 1987, the plaintiff left work early. There is some disagreement as to whether this was for sickness or for a doctor's check up. However, the court finds that, whatever was in fact the case, Cowart believed that the plaintiff was ill and had sought treatment for that illness. However, later that evening, Cowart saw the plaintiff out for dinner on a date with another CCA employee. Cowart felt that the plaintiff had lied to him concerning her illness and told an employee, Snure, that the plaintiff had lied about not feeling well.

The plaintiff was counseled concerning her inability to get along with her co-workers and her negative attitude. On August 3, 1987, due to her continuing problems at work and the strain and disloyalty perceived by Cowart, the plaintiff was terminated. (Tr. 564–66).

## CONCLUSIONS OF LAW

### Sexual Harassment

■ The plaintiff alleges that the sexual harassment by the defendant caused a hostile work environment which affected a term or condition of her employment.[1] Generally to establish a case of sexual harassment, the plaintiff must prove:

(1) she is a member of the protected group, (2) was the subject of unwelcome sexual harassment, (3) the harassment occurred because of her sex, (4) the harassment affected a "term, condition, or privilege" of her employment and (5) the employer knew, or should have

1. Though it appeared in the complaint that the plaintiff might have been raising a quid pro quo claim as well, she does not argue such a claim in her post trial brief.

known, of the harassment and failed to take remedial action.

*Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900 (11th Cir.1988) *citing, Henson v. City of Dundee,* 682 F.2d 897, 903–05 (11th Cir.1982).

The harassment must be "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Henson,* 682 F.2d at 904. This is to be determined by a totality of the circumstances. *Henson,* 682 F.2d at 904.

The court must find, based on the findings of fact above and hearing all of the testimony at the trial, that the plaintiff has failed to prove a case of hostile environment. The court recognizes the plaintiff's testimony concerning the statements by Cowart and Oestreich and Williams. However, no other witness testified to such acts specifically and none of the witnesses recalled specific sexually demeaning statements at the staff meetings. Although there is evidence that the casual atmosphere and loose conversation sometimes had sexual connotations or sexual implications, the plaintiff has failed to show by a preponderance of the evidence that there was a pervasive atmosphere of sexual harassment. While the court may not condone some of the actions in the club, the court must find that these acts did not rise to the level of sexual harassment required to violate Title VII. The plaintiff did not recall some of the most outrageous alleged actions—such as Cowart, standing on tables while she attempted to talk to prospective members on the telephone, and Oestreich's comments concerning sexually graphic acts—until the day of trial. There may have been some joking in the office, however, based on the testimony at trial, the court finds that this joking did not take the form of sexually harassing statements or innuendo to such an extent that they created a sexually harassing environment actionable under Title VII. Thus, the magistrate finds that the plaintiff's claim must fail.

*Retaliation*

The plaintiff also maintains that she was terminated in retaliation for her com-

plaints regarding sexual harassment. Once a case is tried on the merits, the court must proceed to the issue of pretext. *Woody v. St. Clair County Com'n,* 885 F.2d 1557 (11th Cir.1989); *Moore v. Alabama State University,* 864 F.2d 103 (11th Cir.1989). Despite the defendant's contentions, the court does find that the plaintiff complained of what she perceived as sexual harassment. The defendant states that it terminated the plaintiff because she was becoming more and more difficult to work with and that all of the persons who worked with her complained about her. The plaintiff must show that the reason is not true. The court finds that the plaintiff has not done so. The plaintiff's own witness stated that she was in fact difficult to work with due to the pressures involved in the job. Plaintiff was a no-nonsense type of person. She did not have time to explain or help others in learning their jobs. She did not put up with employees who did not do their jobs efficiently. This, combined with the increasing pressure of the job, her negative attitude concerning Cowart and Oestreich, as well as the Club Corp., all caused the defendant to terminate the plaintiff. The plaintiff was given time off to rest and try to recuperate from the problems at work and was provided psychiatric counseling by the defendant. She had complained of Cowart's managing style and made negative comments concerning his ability as a manager as early as January, 1987. This discord, which seems to have increased due to the unusual financial arrangement of the club, the pressure to obtain members, and the failure to meet the necessary goals, eventually led to her dismissal. The court finds that her complaints concerning the sexual harassment she may have perceived were not the basis for her termination. Thus, the court must find that the plaintiff's allegations of retaliation fail.

### SUMMARY

This case was a very difficult case. However, the magistrate must RECOMMEND that judgment be entered in favor of the defendants in this action because the

plaintiff has failed to prove by a preponderance of the evidence, a case of sexual harassment or retaliation.

IT IS SO RECOMMENDED.