**Loralei Sones MORGAN and Pamela J. Hurst, Plaintiffs,**

v.

**The HERTZ CORPORATION, Defendant.**

**Nos. 80–2206–M, 80–2212–M.**

United States District Court,
W. D. Tennessee, W. D.

Oct. 22, 1981.

Alan Bryant Chambers, Memphis, Tenn., for plaintiffs.

J. Edward Wise, David P. Jaqua, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., for defendant.

## MEMORANDUM DECISION

McRAE, Chief Judge.

This case presented to the Court a disgusting saga of the on-going activities in employer-employee relations at the Hertz Corp. in Memphis, Tennessee. There is some regrettable conduct on the part of both, but the Court concludes that the plaintiffs have proved that the defendant did discriminate against them on the basis of sex.

The case presents the claim of two women employees of the Hertz Corporation that they have been discriminated against in employment based on sex, contrary to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* The plaintiffs claim that they were denied promotion to managerial jobs at Hertz, and that they and

women in general at Hertz are victims of sexual harassment which principally takes the form of being subjected to suggestive and indecent comments and direct questions of a sexual nature. The defendant Hertz Corporation denies that the women were passed over for promotion, and asserts that the promotions were given to men because they were better qualified. Hertz has a double response to the claim of sexually abusive language. First, Hertz contends that most of the women employees encourage and invite the offensive language; and secondly, Hertz contends that the repetitive use of sexual questions and comments by managers is not inappropriate and does not constitute a civil rights violation.

The proof in the record shows that the plaintiffs Loralei Sones Morgan and Pamela J. Hurst had been in the employment of Hertz Corporation for several years in the capacity of rental representatives. The primary function of the rental representative at Hertz is to attend to the leasing and documentation of leasing of automobiles to Hertz customers. However, the rental representatives frequently performed various administrative duties such as preparing the daily report of business.

The line of promotion at the Hertz Corporation in Memphis, Tennessee, goes from rental representative to station manager to senior station manager to assistant city manager to city manager. Plaintiffs contend that they applied for promotion to station manager in October 1978, July 1979, December 1979, and April 1981. The primary function of the station manager is to manage the rental representatives.

The plaintiffs also contend that they were denied a promotion to the job of maintenance manager in February 1980; however, the Court finds that maintenance manager requires experience as a mechanic, and that the defendant Hertz Corporation had a valid non-discriminatory reason for securing a male with mechanic experience for that job.

■ The burden of proof to determine whether or not discrimination has occurred in a civil rights case is set out in the case of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In that case the Supreme Court stated that the plaintiff must first make out a case of *prima facie* discrimination. This can be done by showing that an opening for a job became available, that a person in a protected category (female) applied for the job, that the job remained available but was offered to a person not in the protected category. By application of this principle the Court finds that the plaintiffs have made out a *prima facie* case of sex discrimination. The station manager jobs came open on four or more occasions, the plaintiffs applied for the jobs, and the jobs were awarded to men. Therefore, within the meaning of *McDonnell-Douglas v. Green, supra,* the burden of persuasion then shifted to the defendant employer to articulate a valid non-discriminatory reason for placing males in the job. Hertz Corporation articulated what would be legitimate non-discriminatory reasons if their articulation were accurate. Hertz contends that they hired men as station managers because the men had superior job qualifications. Under *McDonnell-Douglas v. Green,* the plaintiffs are then required to prove that the articulated non-discriminatory reason is pretextual and that the plaintiffs were discriminated against on the basis of their sex. The Supreme Court has said that the showing of a pretext and discrimination by the plaintiff must be by a preponderance of the evidence.

■ This Court is of the opinion and finds as a fact that the articulated non-discriminatory reasons of superior job qualifications on the part of males promoted to the station manager jobs is pretextual. The Court finds that men were promoted into the station manager jobs because a cadre of male management preferred men in management positions at Hertz and disfavored the promotion of women. The primary reasons the Court finds that the company pretextually made the promotions are, first, because city manager Charlie Wright vocalized his anti-woman animus; secondly, because most of the promotions were made

by Hertz management in ignorance of the true job performance abilities of the males that were hired, and were only made upon vague and undetailed recommendations of good job performance of the men involved by other men higher up in the Hertz Corporation; and thirdly, because Hertz has a long history of discriminating against women in promotion to managerial positions.

The job of station manager came open in July 1979. Plaintiffs Sones Morgan and Hurst applied for the job. However, the job was given to Chip Burgess, a 24-year-old man who had less experience in working for Hertz. The Court finds that the city manager responsible for the promotion did not want women to be promoted. He was overheard to say that a woman should not be station manager because she could not go away for training, and because a woman could not follow irate men customers into the men's restroom. Furthermore, garageman Harold Matthews testified in open court that he overheard city manager Charles Wright say that a woman's place was in the kitchen.

This brings the Court to comment on the most damaging evidence against Hertz on the issue that the alleged non-discriminatory reasons are in fact pretextual. The testimony of Mr. Matthews, the garageman, shows that Hertz engaged in a cover-up of the true facts concerning the denial of promotions to plaintiffs Sones Morgan and Hurst. Mr. Matthews admitted on the witness stand that he related the conversation about "a woman's place in the kitchen" to the Equal Employment Opportunity Commission. Thereafter, a high management official of the Hertz Corporation came to Mr. Matthews at a time when he was negotiating a union contract on behalf of the union. This high management official of Hertz used the labor negotiation situation as unfair leverage over Mr. Matthews, and induced him to sign a statement saying he had not heard city manager Charles Wright make any statements against women. Mr. Matthews, under subpoena, recanted on the witness stand and said he had actually heard the statement. But the most damaging aspect of this incident was that the oath

and seal of a notary public was affixed to the false statement taken by Hertz. Mr. Matthews stated that he did not give a sworn notarized statement. On the other hand, Hertz admitted a purportedly sworn notarized statement during his cross examination. The Court could have been of the opinion that Mr. Matthews may have forgotten that he swore an oath on this topic to a statement solicited by Hertz. However, the same abuse of the notary and oath procedure occurred again with another witness, Susan Shreve. Mrs. Shreve testified that she also was requested to give a statement against plaintiffs Sones Morgan and Hurst, which she did; but she testified her statement was not under oath. Again, the defendant produced what purported to be the sworn notarized statement of Mrs. Shreve. The Court finds as a fact that neither Mr. Matthews nor Mrs. Shreve in fact swore to statements against the plaintiffs in this case. The Court finds that high management employees of the Hertz Corporation wrongfully added the notary's oath and seal to the statements of Mr. Matthews and Mrs. Shreve for the purpose of solemnizing and making dramatic the pretextual defense by the company.

Furthermore, it is apparent that the Hertz official who acquired their statements went to them with a preconceived theory of fact, and induced them to make statements that were either inaccurate or untrue. Mrs. Shreve testified from the witness stand that plaintiffs Sones Morgan and Hurst were both able and qualified for a promotion to the job of station manager. Her statement with the false oath and notary seal affixed denied that they were qualified. Mrs. Shreve reconciled the difference in her in-court testimony and her out-of-court statement by saying her superiors came to her and made it clear that she was expected to write a statement condemning the plaintiffs' abilities, which she did. Under oath in court she recanted. The Court finds as a fact that some unknown high management official of the Hertz Corporation wrongfully induced the giving of false statements as part of the company's pro-

gram to justify the denial of promotions to these two plaintiffs.

With regard to Mrs. Sones Morgan, every city manager who testified admitted that she was an able rental representative and was worthy of promotion. City manager Charles Wright said he would have promoted her had a more qualified male not come along.

With regard to Mrs. Hurst, several of the rental representatives testified that she was of good ability, and her former supervisor, Susan Shreve, said that she was able and worthy of promotion to the position of station manager.

The defendants have also established that plaintiffs were guilty of various kinds of inefficiency and misconduct, such as imperfect accounting, rudeness, and hopping over the counter. However, the Court finds that the misconduct and inefficiency of the plaintiffs did not justify the discharge or discipline of either plaintiff. The Court further finds that one accusation of misconduct against Mrs. Sones Morgan is illustrative of the undue length to which Hertz has gone in defense of this case to set up pretextual justification for passing the women over for promotion; and this is the "hopping over the counter" incident. This all evolved one night when Mrs. Sones Morgan apparently locked herself out of the counter area. About this time a supposed stranger, who appeared to be a customer, walked up. Mrs. Sones Morgan at first thought she would wait until she could get a key to enter her work area. Then she decided it would be better to hop over the counter rather than to make the stranger wait. She was heard to say, "to hell with it," and over she went. The stranger turned out to be none other than a stuffy and pretextual regional manager of the Hertz Corporation. He testified he was "shocked" to see such behavior, which is ridiculous. The Court notes that it is ironic that the regional manager was so "shocked" by the counter hopping, because Hertz Corporation had a national advertising campaign featuring football player O. J. Simpson hopping over suitcases and obstacles in an airport. The Court also wonders at the sincerity of the regional manager's "shock" because it would seem to make better business sense to serve the customer promptly rather than risk his walking off to a competitor. Furthermore, a potential customer of Hertz in the fourth quarter of the 20th century would be favorably impressed with an attendant who hopped the counter. However, even if hopping the counter is regarded as serious misconduct, it does not seem to merit the harsh reaction of the regional manager who pompously said he wanted Mrs. Sones Morgan fired. He, in behalf of Hertz, came to his senses later and commuted the discharge to a suspension.

In July 1979 there was an opening for station manager. Both of the women applied for the job, but it was given to a 24-year-old man who had less job experience. Then in December 1979 a job for station manager became available. Again, both plaintiffs applied for it, and instead of making one promotion the company made two. One of the newly promoted was a woman, the other was Danny Havens, a 22-year-old man with approximately two years experience at Hertz. Again, a station manager position became open in April 1981. And the Court finds that management officials of Hertz advised the women that they could not apply for the jobs. The Court further finds that the articulated reason of superior job qualifications on the part of the males promoted into the station manager jobs is pretextual because there is no proof in the record to indicate that the males were in fact better qualified. The most telling lack of rational evaluation of relative merits is found in the deposition of city manager Charlie Wright. Mr. Wright was responsible for the 1978 promotion. At that time he did not know whether the man he promoted was better qualified than the plaintiffs. All Mr. Wright knew was that the man he promoted was highly recommended by high male officials of Hertz. He did not have any personal knowledge of, nor did he familiarize himself with the details of Mr. Wedemeyer's job performance. He merely took the "excellent" evaluation at face value, and was in total ignorance of

the nature of the purported excellence. It is true that Mr. Wedemeyer and Mr. Burgess had some management experience with Hertz before being made station managers. The Court finds that they had the experience partially as a result of discriminatory treatment of women at Hertz. However, the Court also finds that the kind of management experience had by Mr. Wedemeyer and Mr. Burgess did not necessarily show them able to perform the job of station manager better than the plaintiffs. The reason this is true is that station managers primarily do the same job as rental representatives while at the same time occupying a supervisory position over rental representatives. Therefore, a good rental representative has the kind of experience necessary to perform well as a station manager. It is also true that some kinds of experience gained at higher levels of Hertz management is unrelated to the job duties and supervisory duties actually done by the station managers. It is also true that the higher levels of management could be totally inexperienced in the day-to-day workings of the rental counter, and could be less qualified to be a station manager than an experienced rental representative would be.

The Court is also led to the conclusion that sex discrimination exists in this case by a review of the employment practices of the Hertz Corporation in a historical perspective. The Court had the opportunity to listen to Mrs. Margaret McAfee, a 21-year-employee of Hertz. She gave a good recommendation for both of the plaintiffs. Her testimony also proved that over the years most employees of the Hertz Corporation in Memphis have been women—but almost all of the management employees have been men. One of the first woman station managers was Mary Kinard, who acquired the job after a struggle. Susan Shreve testified that she became a station manager only after she had filed an EEOC complaint and lawsuit. Therefore, the history of Hertz shows that one woman struggled into management, another got into management by filing an EEOC complaint, and the rest got into management only after Mrs. Sones Morgan and Mrs. Hurst filed this lawsuit.

■ The Court is also led to a conclusion that sex discrimination exists at Hertz because of the history of vulgar and indecent language tolerated by management and directed toward women employees. The proof is clear that the order of the day at Hertz is for supervisory men employees to address questions about sexual activity and preference to women rental representatives. The Court could not help but notice that some of the women affected did not mind, or even participated in the comments and remarks; *however, the Court finds that the plaintiffs did not appreciate the remarks and that many of the other women did not either.* The Court is of the opinion that the addressing of sexually indecent comments to female employees is a form of sexual harassment and discrimination prohibited by Title VII of the Civil Rights Act of 1964, *and that an injunction should issue against Hertz, its agents, servants and employees, restraining them from these kinds of comments.* By this the Court means remarks such as "Did you get any over the weekend?"

■ The Court finds that the plaintiffs herein have sustained certain damages as a result of the discriminatory practices of the defendant. The proof in the record shows that had the plaintiffs not been discriminated against and had been promoted as station managers, they would have received as additional compensation the full use of an automobile. The use of said automobile would include not only maintenance, tires, and gasoline, but would also include insurance coverage for personal liability while driving said vehicle. Under cross examination by plaintiffs' counsel, Mr. Herb Luckwaldt, the zone manager for defendant, testified that the average costs of a car per year was approximately $3,500. This sum was subsequently modified through the testimony of Mr. Guy Grumdman, city manager for the defendant, who testified that the cost of a car locally to the Hertz Company was approximately $2,168. This figure was based on maintenance, deprecia-

tion, tires and other related items necessary to keep an automobile in service with the defendants. Obviously, the figures quoted at trial are not an accurate statement of the exact costs of running an automobile, either to the plaintiffs or to Hertz. Counsel for the defendants suggested at trial that, in the event the Court found that the plaintiffs prevailed on the issue of liability the Court could refer the issue of damages to the Magistrate. The Court also stated that there was a possibility that the matter of damages could be solved through the vehicle of a new trial specifically on the issue of damages. The Court finds that the issue of damages should be referred to the Magistrate for the purpose of taking testimony to the exact extent of damages sustained by the plaintiffs as a result of the discriminatory acts of the defendants.

Further, the Court finds that as an additional element of damages the Magistrate should take proof on the exact amount of wage variance that should be attributed to the plaintiffs as the result of the discriminatory acts of the defendant. The defendant testified from certain documents prepared by the defendant, stating that the salary differential between a rental representative and a station manager vary quantitatively. The Court finds that the Magistrate should take proof as to the exact amount of salary differential between the job positions of rental representative and station manager.

Accordingly, this matter is referred to the United States Magistrate for the purpose of taking testimony relative to the above-mentioned area. On completion of the testimony the Magistrate shall prepare his report and refer the matter back to the Court for appropriate action.

IT IS SO ORDERED.